OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Joshua A. Boyd, filed November 21, 2005. On June 21, 2004, Boyd was indicted on one count of felonious assault, in violation of R.C.2903.11(A)(2), with a three year firearm specification, in violation of R.C. 2929.14 and 2941.145. On October 26 and 27, 2005, a jury trial was held, and Boyd was found guilty as charged. On November 15, 2005, the court sentenced Boyd to a term of seven years, along with a mandatory term of three years on the firearm specification. Boyd appeals his conviction and sentence.
 {¶ 2} The events giving rise to this matter began on Sunday, May 23, 2004, when Boyd accompanied Ronnie Kamarer to the home of the victim herein, Dante Regulus. According to Kamarer, she and Regulus, who dated for over a year, had an argument the night before regarding the phone number of another male, named Trey, that Regulus found in Kamarer's cell phone. Regulus and Kamarer argued again on Sunday morning after Regulus phoned Kamarer at work and told her that he had purchased a stereo for her car, and that he wanted to be reimbursed for the $80.00 he had spent. When Kamarer returned from work, they continued to argue. According to Kamarer, Regulus became violent, and she asked him to leave her home. Kamarer drove Regulus to his home and dropped him off there.
 {¶ 3} Kamarer, who was upset, then received a call from Boyd, with whom she had been friends for five or six months. According to Kamarer, Boyd said, "why don't you just come get me? He said, we can smoke a blunt and, you know, just talk about the situations and see if I can't calm you down." (A blunt is a cigar in which the tobacco has been replaced with marijuana.) Kamarer picked Boyd up in her car, and after driving around for a while, drove to Regulus' home "to make [Regulus] jealous a little bit." Meco Jackson, whom Regulus described as "my other girlfriend," also arrived at Regulus' home. Regulus got into Jackson's vehicle, a Suburban, and they drove away, as did Kamarer and Boyd.
 {¶ 4} Moments later, Jackson's vehicle blocked the path of Kamarer's vehicle. Regulus exited the Suburban and approached Kamarer's vehicle. "He was upset. He was vulgar. He was cussing. He was threatening," according to Kamarer. Regulus then returned to Jackson's vehicle, and Kamarer drove away, only to have her vehicle blocked again by Jackson's two or three more times. The last time Jackson blocked Kamarer, Kamarer was "trembling," and she asked Boyd to switch seats with her and drive her home. Boyd began driving, and when they reached another intersection, Jackson's vehicle passed Kamarer's. Boyd then followed the Suburban into an alley. Regulus again exited Jackson's vehicle and approached the driver's side window of Kamarer's car. Kamarer noticed a gun for the first time between Boyd's legs. Boyd cracked open the door, and then exited Kamarer's car, leaving the car in neutral. When the car began to roll forward, Kamarer tried to put it in gear to keep it from hitting the Suburban in front of it. She heard a gunshot. Kamarer then saw Regulus grab his neck and fall to the ground. Boyd returned to the vehicle and drove to a Kroger parking lot on Needmore and Dixie Drive. Boyd got out of the car and told Kamarer to drive to her family's home in Pennsylvania. Kamarer drove to the Ohio/West Virginia border but then turned around and returned to Dayton.
 {¶ 5} Shirley Williams, who lives near the alley and was walking to her car, witnessed the shooting and called 911. She could later not identify Boyd as the shooter. Regulus initially indicated to the authorities at the time of the shooting that Trey, whom he had never met, shot him, because "that's who Ronnie, my ex-girlfriend — that's the guy she used to mess with." Regulus was taken by ambulance to the hospital, where he remained for two or three months. Regulus is paralyzed as a result of the shooting.
 {¶ 6} Kamarer testified that she was later brought to the police station on other charges, and she told Detective Doyle Burke of the Dayton Police Department that Boyd shot Regulus. She testified that Trey was not present at the shooting and that was "why [she] was so persistent in letting Detective Burke know that he was not there, had nothing to do with it."
 {¶ 7} On June 2, 2004, Detective Burke visited Regulus at the hospital and showed him a photo spread of possible suspects. Although Regulus could not speak due to a trachea tube, he nodded at a picture of Boyd, photo number six in the spread. On June 21, 2004, Burke again showed Regulus the photo spread, and Regulus again identified Boyd as the person who shot him. At trial, Jackson testified that she identified Boyd as "the guy that was closest to the guy that I saw" in a photo spread of 18 that Detective Burke showed her.
 {¶ 8} Ebony Cooper, Boyd's girlfriend and the mother of one of Boyd's children, and Amanda Sears, the mother of two of Boyd's children, provided an alibi for Boyd, testifying that he attended a birthday party with Cooper and Boyd's and Sears' daughter, Jaylin, at the time of the shooting. Boyd also testified that he did not shoot Regulus and that he attended the birthday party.
 {¶ 9} Boyd asserts four assignments of error. His first assignment of error is as follows:
 {¶ 10} "THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF FELONIOUS ASSAULT"
 {¶ 11} Boyd argues that he was misidentified as the shooter, arguing that Regulus told police that Trey shot him, and that Kamarer gave false testimony to protect Trey.
 {¶ 12} "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. McKnight, 107 Ohio St.3d 101, 112, 837 N.E.2d 315,2005-Ohio-6046 (Internal citations omitted).
 {¶ 13} R.C. 2903.11(A)(2) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ 14} We conclude that the evidence is sufficient to support Boyd's conviction. It was up to the jury to assess the credibility of the State's and Boyd's witnesses. After reviewing the evidence in a light most favorable to the State, any rational juror could conclude beyond a reasonable doubt that Boyd committed felonious assault. Regulus identified him twice in a photo spread and in court. Regulus explained that he had never known Trey and only knew his name as an acquaintance of Kamarer's, and that he just assumed that Boyd was Trey at the time of the shooting. Kamarer's testimony corroborated Regulus', and Jackson also selected Boyd's picture in a photo spread and identified him in court. In other words, the evidence before the jury, if believed, was sufficient to establish that Boyd shot Regulus. Boyd's first assignment of error is overruled.
 {¶ 15} Boyd's second assignment of error is as follows:
 {¶ 16} "THE JURY VERDICT SHOULD BE REVERSED BECAUSE IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE"
 {¶ 17} "When an appellate court analyzes a conviction under the manifest weight of the evidence standard it must review the entire record, weigh all of the evidence and all the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (Internal citations omitted). Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." State v. Dossett, Montgomery App. No. 20997,2006-Ohio-3367.
 {¶ 18} Boyd argues that the evidence before the jury favored acquittal due to the testimony of Cooper, Sears and Boyd. Obviously, the jury rejected Boyd's alibi. As the State correctly points out, Cooper and Sears "had a motive to lie. Boyd is Cooper's boyfriend and he fathered children with both of these women." Neither woman came forward with Boyd's alibi until the time of trial, eighteen months after Boyd was indicted. That the jury chose to believe the State's version of events over that of Boyd and his witnesses does not establish that the jury clearly lost its way, and the evidence before us does not weigh heavily against Boyd's conviction. Boyd's second assignment of error is overruled.
 {¶ 19} Boyd's third assignment of error is as follows:
 {¶ 20} "APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL FROM HIS TRIAL ATTORNEY"
 {¶ 21} Boyd argues that the "procedures used by the State during photo-spread identification are unreasonably suggestive and create a substantial likelihood of misidentification." According to Boyd, "Counsel for Appellant should have filed a motion to suppress to test the validity of the procedures used by the officers."
 {¶ 22} Claims of ineffective assistance of counsel are assessed according to the two part test articulated in Strickland v.Washington (1984), 466 U.S. 668. "In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's errors, the result of the proceeding would have been different." State v. Kidd, Clark App. No. 2005-CA-37,2006-Ohio-4008. "Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of reasonable assistance. * * * Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." State v. Parrish, Montgomery App. No. 21206, 2006-Ohio-4161. "'Failure to file a motion to suppress does not constitute per se ineffective assistance of counsel.'" State v.Lodge, Montgomery App. No. 2004 CA 43, 2005-Ohio-1908.
 {¶ 23} "'To warrant suppression of identification testimony, the accused bears the burden of showing that the identification procedure was unnecessary and so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification; and that the identification itself was unreliable under the totality of the circumstances. (Internal citations omitted). The United States Supreme Court has acknowledged that the danger of an incorrect identification is increased where only one photograph is displayed to a witness.'"State v. Bates, Clark App. No. 2005 CA 83, 2006-Ohio-4146.
 {¶ 24} There is no suggestion in the record before us that the procedures used by Detective Burke, in showing the witnesses multiple photographs of suspects, were unduly suggestive. Given the strong presumption that counsel's performance constituted reasonable assistance, Boyd's counsel's failure to file a motion to suppress does not fall below an objective standard of reasonableness. The reliability of Regulus', Kamarer's and Jackson's identifications of Boyd is a matter for the jury to decide, and there is no basis to conclude that Boyd was misidentified. As a result, no prejudice resulted from counsel's failure to file a motion to suppress, and Boyd fails to meet both prongs of theStrickland test. Boyd's third assignment of error is overruled.
 {¶ 25} Boyd's fourth assignment of error is as follows:
 {¶ 26} "THE TRIAL COURT VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO A JURY TRIAL BY MAKING A FACTUAL DETERMINATION TO IMPOSE A SENTENCE BEYOND THE STATUTORY MINIMUM"
 {¶ 27} Boyd received a non-minimum sentence. Boyd argues that he "was unconstitutionally sentenced to a sentence beyond the minimum." The State argues that since Boyd was sentenced after Blakely v.Washington, (2004), 542 U.S. 296, 124 S.Ct. 2531,159 L.Ed.2d 403, which held that a defendant's Sixth Amendment right to a trial by jury is violated when a sentencing judge is required to make factual findings before imposing an enhanced sentence, he waived his right to challenge the constitutionality of his sentence herein by failing to raise the issue before the trial court.
 {¶ 28} The Ohio Supreme Court recently determined that certain sections of Ohio's felony sentencing guidelines, which required judicial fact-finding prior to the imposition of sentence, represented an unconstitutional denial of a defendant's Sixth Amendment right to a jury trial. State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. Foster
established a bright-line rule that any pre-Foster sentence to which the statutorily required findings of fact applied (i.e., more-than-minimum, maximum, and consecutive sentences), pending on direct review at the time that Foster was decided, must be reversed, and the cause remanded for re-sentencing in accordance with Foster, if the sentence is a subject of the appeal. We reject the State's argument that Boyd's argument is waived; Foster clearly directs that "those [matters] pending on direct review must be remanded to trial courts for new sentencing hearings." Boyd's fourth assignment of error is sustained, and this matter is reversed and remanded for re-sentencing consistent withFoster.