OPINION
{¶ 1} Defendant, Demetrius Parrish, appeals from his conviction and sentence for aggravated robbery and aggravated burglary.
{¶ 2} On December 13, 2004, around 12:45 a.m., Rhonda Patterson was at home at 4900 Maplecreek Drive, Trotwood, talking on the phone, when she heard a knock at her door. When Patterson asked who it was, a man mumbled, "Curtis". Believing the man was her neighbor, Patterson opened the door. Suddenly, a woman Patterson knew from the apartment complex as "Chante" (Shackleford) appeared and pointed a gun in Patterson's face, demanding money. Shackleford then forced her way into Patterson's apartment, accompanied by an African-American male.
{¶ 3} Shackleford gave the gun to the male and he pointed it at Patterson while Shackleford ransacked the apartment. Shackleford repeatedly encouraged the man to shoot Patterson. Shackleford and the man stole Patterson's necklace, eighteen dollars in cash, a purse, two rings, a coat, a car amplifier, a DVD player and several CDs and DVDs. Patterson was put in the bathroom. After she heard her front door close and decided that Shackleford and the man had left, Patterson pushed open the bathroom door, which had been secured by a couch placed against it. Patterson immediately called police.
{¶ 4} Detective Archie Swanson of the Trotwood police department was dispatched to Patterson's apartment. Patterson told Detective Swanson that a woman she knew as "Chante" had robbed her, and Patterson identified 4921 Bloomfield Drive, Apartment L., as the location where "Chante" lives. Patterson identified the other robber as an African-American male, medium height, wearing a gray hooded sweatshirt and faded jeans. Patterson stated that she would recognize the man if she saw him again.
{¶ 5} Shortly after the robbery, at around 1:00 a.m., Labelle Hill was awakened when Defendant Parrish who was her boyfriend, came to her apartment at 4921 Bloomfield Drive, Apartment A, accompanied by a woman who was later identified as Brooke Barns. When Hill asked Defendant what was going on, he told her to shut up because police were outside her apartment. When police appeared at Hill's front door, Defendant and Barns fled out the back patio door. Hill subsequently discovered a bag of CDs and DVDs and a car amplifier in her apartment that were not there before Defendant and Barns arrived. Hill gave police permission to enter and search her apartment, and they discovered several items that had been stolen from Patterson including a gold necklace, two rings, cash, an amplifier, and a bag of CDs and DVDs.
{¶ 6} After Detective Swanson arrived at Hill's apartment, Sergeant Coleman reported over the police radio that she had detained a suspect in front of 4921 Bloomfield Drive. That suspect was Defendant Parrish, and he was handcuffed and placed in the rear of Sergeant Coleman's cruiser and transported to Patterson's nearby apartment building. Detective Swanson told Patterson that he had a person of interest he wanted her to look at. Detective Swanson walked Patterson over to Sergeant Coleman's cruiser, and when Swanson shined his flashlight into the rear passenger area Patterson immediately identified Defendant as the man who robbed her.
{¶ 7} Later that same day, Detective Swanson showed Patterson two photospreads. Patterson identified Chante Shackleford and Defendant from those photospreads as the two people who robbed her at gunpoint. When Detective Swanson interviewed Shackleford she admitted that Defendant had committed the robbery with her. Defendant, however, denied involvement, and claimed that when Barns came to Hill's apartment that night asking to use the phone, Barns hid the items stolen from Patterson in Hill's apartment.
{¶ 8} Defendant Parrish was indicted for aggravated robbery, R.C. 2911.01(A)(1), and aggravated burglary, R.C. 2911.11(A)(2). A firearm specification, R.C. 2941.145, was attached to both charges. Defendant filed a motion to suppress the pretrial identifications of him and the statements he made to police. Following a hearing the trial court refused to suppress the identifications and Defendant's statements, with the exception of his agreement to show police the apartment he and Barns had walked to that night, which was suppressed.
{¶ 9} Following a jury trial Defendant was found guilty of all charges and specifications. The trial court sentenced Defendant to concurrent prison terms of seven years on each charge, plus one additional and consecutive three year term on the merged firearm specifications, for a total of ten years.
{¶ 10} Defendant timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
{¶ 11} "THE TRIAL COURT ERRED, DENYING APPELLANT DUE PROCESS AND A FAIR TRIAL, IN FAILING TO SUPPRESS EVIDENCE RELATED TO A SUGGESTIVE IDENTIFICATION."
{¶ 12} Defendant argues that the pretrial identification procedures utilized by police, a one man show-up and a photographic lineup, were so impermissibly suggestive that they rendered the resulting identification unreliable and therefore inadmissible. We disagree.
{¶ 13} When a witness identifies a defendant prior to trial, due process requires a court to suppress evidence of the witness's prior identification upon the defendant's motion if the confrontation was unduly suggestive of the defendant's guilt and the identification was unreliable under the totality of the circumstances. State v. Murphy, 91 Ohio St. 3d 516, 534,2001-Ohio-112.
{¶ 14} The defendant has the burden to show that the identification procedure was unduly suggestive. If the defendant meets that burden, the court must then consider whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character. State v. Wills
(1997), 120 Ohio App.3d 320, 324. If the pretrial confrontation procedure was not unduly suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required. Id., at 325; State v. Beddow
(March 20, 1998), Montgomery App. Nos. 16197, 16198.
{¶ 15} A one man show-up identification procedure, unlike a well-conducted lineup, is inherently suggestive. State v. Sherls
(February 22, 2002), Montgomery App. No. 18599, 2002-Ohio-939. Nevertheless, such identifications are admissible if they are reliable. State v. Moody (1978), 55 Ohio St.2d 64; Sherls,supra. We have repeatedly held that one man show-ups which occur shortly after the crime are not per se improper, State v. Click
(May 9, 1989), Montgomery App. No. 11074, and have held that prompt on-the-scene show-ups tend to insure the accuracy of identification, involve a minimum intrusion, and insure the prompt release of persons not identified. State v. Gilreath
(June 19, 1992), Greene App. No. 91CA35. Factors to be considered in evaluating their reliability include the prior opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Moody, supra; Sherls,supra.
{¶ 16} Patterson described the male robber to Detective Swanson as an African-American male, 5'10"-5'11" tall, wearing a gray hooded sweatshirt and faded jeans. Patterson indicated that although the hood was tied around the man's face, his face was clear and visible and she could identify him if she saw him again. Just two hours after the robbery occurred, Patterson promptly and positively identified Defendant as the robber when she viewed him as he sat in the back seat of a police cruiser, even though Defendant wore different clothing at that time. Detective Swanson may have exacerbated any inherent suggestiveness of this one man show-up procedure when he told Patterson that he had "a person of interest" he wanted her to look at. However, Swanson did not tell Patterson that the person in the rear of the police cruiser was the man who invaded her home and robbed her. Sherls, supra. His remark was no more than a reason for asking Patterson to look at the man in custody.
{¶ 17} Although Defendant argues that Patterson's identification of him was not reliable because she had not mentioned several pronounced scars on Defendant's face when she described the robber, we agree with the trial court that had Patterson specifically denied that the male robber bore any facial scars, that would have raised a serious question as to the reliability of her subsequent identification. However, Patterson neither denied nor confirmed Defendant's facial scars; she simply did not mention them. Viewing the totality of these facts and circumstances, we conclude that Patterson's identification of Defendant as the robber was sufficiently reliable to be admissible despite the suggestiveness inherent in this one man show-up procedure.
{¶ 18} With respect to the photospread shown to Patterson by Detective Swanson, the evidence demonstrates that Swanson entered Defendant's personal identifying information into the police computer which then produced several photographs of similar-looking individuals. Detective Swanson selected the photographs most closely resembling Defendant and arranged them into a six picture photospread. We have held that a computerized method of creating photospreads avoids most potential unfairness and almost any claim that the lineup was suggestive. State v.Carter (June 2, 2006), Montgomery App. No. 21145.
{¶ 19} Furthermore, the manner in which this photographic lineup was presented to Patterson was not suggestive. Detective Swanson read to Patterson the standard instructions for viewing the photospread, which include an admonition that the picture of the person who committed the crime may or may not be included in the photospread. Detective Swanson did not tell Patterson whom to pick out or even suggest that the perpetrator was included in the photospread. Patterson immediately identified the photograph of Defendant as the man who had entered her apartment and robbed her.
{¶ 20} Defendant does not argue or suggest any specific way in which this photospread or the way it was presented to Patterson was suggestive, and we find that it was not unduly suggestive. Accordingly, there is no need to further inquire into the reliability of Patterson's identification. Carter, supra. The trial court did not err or abuse its discretion when it denied Defendant's motion to suppress the pretrial identifications.
{¶ 21} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
{¶ 22} "APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
{¶ 23} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
{¶ 24} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52.
{¶ 25} The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of facts to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. In Statev. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
{¶ 26} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
{¶ 27} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
{¶ 28} In arguing that his conviction is against the manifest weight of the evidence, Defendant repeats his previous claim that the evidence identifying him as the perpetrator is unreliable. In disposing of the previous assignment of error we concluded that the pretrial identification procedures utilized by police were not so unfairly suggestive as to render the subsequent identification unreliable. Examination of the evidence presented at trial reveals that Patterson focused on Defendant's uncovered face during the robbery, because she already knew the identity of the female perpetrator, and that at times Patterson was only inches away from Defendant's face. Patterson immediately and positively identified Defendant as the perpetrator just two hours after the robbery during a one man show-up, and again identified him later that same day from a photospread.
{¶ 29} Defendant makes much of the fact that Patterson failed to mention several noticeable scars on his face. Patterson explained at trial, however, that she was afraid the perpetrators were going to shoot her, and that so much was going on with trying to gain some control over the situation and watch Chante Shackleford and Defendant and keep them from harming her that she did not focus on the scars.
{¶ 30} Importantly, Patterson's identification of Defendant is not the only evidence implicating Defendant in these crimes. The co-defendant, Chante Shackleford, testified that Defendant was the man who committed this robbery with her and held the gun on Patterson. Furthermore, several items stolen from Patterson's apartment were found hidden inside the apartment of Defendant's girlfriend, Labelle Hill, and these items appeared there only after Defendant and another woman, Brooke Barns, had entered Hill's apartment around 1:00 a.m., shortly after the robbery occurred. Additionally, the sweatshirt Defendant wore during the robbery was found at Shackleford's apartment, to which Defendant returned immediately after this robbery, supporting an inference that he had left it there.
{¶ 31} The credibility of the witnesses and the weight to be given to their testimony were matters for the jury to resolve.DeHass, supra. The jury did not lose its way simply because it chose to believe the State's witnesses's version of the events. Reviewing this record as a whole, we cannot clearly find that the evidence weighs heavily against a conviction, that the jury lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice occurred. Defendant's convictions are not against the manifest weight of the evidence.
{¶ 32} The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
{¶ 33} "APPELLANT WAS DEPRIVED OF DUE PROCESS AND A FAIR TRIAL BECAUSE OF A FAULTY JURY INSTRUCTION."
{¶ 34} Defendant was found guilty of aggravated burglary in violation of R.C. 2911.11(A)(2), which provides:
{¶ 35} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense if any of the following apply:
{¶ 36} * * *
{¶ 37} "(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."
{¶ 38} Defendant argues that the trial court erred when it instructed the jury on the offense of aggravated burglary because the court failed to identify the specific underlying criminal offense which the jury could find that Defendant had the purpose or intent to commit when he trespassed in Patterson's apartment. As a result of this alleged error, Defendant speculates that the jury may have concluded that Defendant trespassed in Patterson's apartment but without necessarily agreeing on what that specific underlying criminal offense was, depriving Defendant of his due process right to a unanimous verdict.
{¶ 39} Initially, we note that Defendant failed to object to the jury instructions. Accordingly, he has waived for purposes of appellate review all but plain error. Crim.R. 30(A); State v.Jones, 91 Ohio St.3d 335, 2001-Ohio-57. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been different. State v. Long
(1978), 53 Ohio St.2d 91.
{¶ 40} Contrary to Defendant's assertion, a review of the trial court's jury instructions reveals that the court identified theft as the underlying criminal offense Defendant had a purpose to commit when he trespassed in Patterson's apartment. The court stated:
{¶ 41} "We now look at the charge of aggravated burglary. Demetrius Parrish is charged with aggravated burglary. Before you can find Demetrius Parrish guilty of aggravated burglary, you must find beyond a reasonable doubt that on or about the 13th
day of December, 2004, and in Montgomery County, Ohio, that Demetrius Parrish by force, stealth or deception trespassed in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of Demetrius Parrish was present with the purpose to commit in the structure or in a separately secured or separately occupied portion of the structure any criminal offense and did have a deadly weapon on or about his person or under his control." (T. 434-435).
{¶ 42} * * *
{¶ 43} "Demetrius Parrish must have trespassed with the purpose to commit any criminal offense. A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of Demetrius Parrish a specific intention to commit a criminal offense when he trespassed.
{¶ 44} "Theft, as the court defined in the aggravated burglary instruction, is a criminal offense. That should be theft as defined in the aggravated robbery charge. That's a typo there, as defined in the aggravated robbery charge, is a criminal offense." (T. 436.)
{¶ 45} The trial court's having identified theft as the underlying criminal offense for purposes of aggravated burglary, no error, much less plain error, is demonstrated with respect to the trial court's jury instructions.
{¶ 46} The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
{¶ 47} "APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."
{¶ 48} In order to demonstrate ineffective assistance of trial counsel a Defendant must demonstrate that counsel's performance was deficient and fell below an objective standard of reasonable representation, and that Defendant was prejudiced by counsel's performance; that is, there is a reasonable probability that but for counsel's unprofessional errors, the result of Defendant's trial or proceeding would have been different. Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674;State v. Bradley (1989), 42 Ohio St.3d 136.
{¶ 49} Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of reasonable assistance.Id. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel.Id.
{¶ 50} Defendant argues that his trial counsel performed deficiently because he failed to object to the trial court's faulty jury instruction on aggravated burglary. In disposing of the previous assignment of error, however, we concluded that the court's instruction on aggravated burglary was not erroneous. Therefore, counsel did not perform in a deficient manner by failing to object to that jury instruction.
{¶ 51} Defendant further complains that his counsel performed in a deficient manner because he failed to object to the prosecutor's misstatement, during closing argument when describing the elements of aggravated burglary. In discussing the "occupied structure" element of aggravated burglary, the prosecutor stated:
{¶ 52} "I submit to you, he lived in an apartment at 4900 Maplecreek Drive, and that apartment is an occupied structure."
{¶ 53} Obviously, Defendant did not live in the apartment that he burglarized at 4900 Maplecreek Drive, Trotwood, Ohio. Rather, the victim, Rhonda Patterson, lived there. Defendant lived with Labelle Hill at 4921 Bloomfield Drive, where much of the property stolen from Patterson's apartment was found. The prosecutor's misstatement did not result in any prejudice to Defendant because the evidence clearly demonstrates that Defendant did not live or reside at the place where these offenses occurred, and that Defendant and Shackleford forcibly entered that place and robbed Patterson at gunpoint. It is undisputed that the apartment was an occupied structure. Counsel did not perform deficiently by failing to object to the prosecutor's misstatement because the evidence presented demonstrates that the apartment burglarized by Defendant was occupied, albeit by Patterson, not Defendant. Furthermore, no prejudice resulting from counsel's failure to object has been demonstrated because there is no reasonable probability that Defendant would have been acquitted of the burglary charge if counsel had objected to the prosecutor's misstatement. Ineffective assistance of counsel has not been shown.
{¶ 54} The fourth assignment of error is overruled.
FIFTH ASSIGNMENT OF ERROR
{¶ 55} "APPELLANT WAS DEPRIVED OF A FAIR TRIAL AND DUE PROCESS DUE TO PROSECUTORIAL MISCONDUCT."
{¶ 56} The test for prosecutorial misconduct is whether the prosecutor's remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. Statev. Bey, 85 Ohio St.3d 487, 493, 1999-Ohio-283. The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. Id.
{¶ 57} Defendant argues that the prosecutor committed misconduct when she misstated during closing argument that Defendant, rather than the victim, Rhonda Patterson, lived in the apartment at 4900 Maplecreek Drive that was burglarized, and therefore that was an occupied structure for purposes of the aggravated burglary statute.
{¶ 58} Defendant did not object to the prosecutor's comment in closing argument about which he now complains. Accordingly, he has waived all but plain error. Ballew, supra. Furthermore, as we noted in disposing of the previous assignment of error, the prosecutor's remark mistakenly identifying Defendant as the person who lived at the apartment at 4900 Maplecreek Drive where the burglary and robbery took place, was nothing more than a harmless misstatement that did not prejudice Defendant's substantial rights. In that circumstance, a claim of prosecutorial misconduct is itself improper. See: State v.McGonegal (Nov. 2, 2001), Montgomery App. No. 18639.
{¶ 59} The uncontroverted evidence shows that Patterson lived in the apartment where the burglary and robbery occurred and that she was present when those offenses were committed. Clearly, that apartment was an occupied structure. We are confident Defendant would have been convicted of aggravated burglary absent the prosecutor's innocent misstatement about who lived there, Statev. Loza (1994), 71 Ohio St.3d 61, and we cannot say that but for this misstatement the outcome of Defendant's trial would clearly have been different. Plain error has not been demonstrated.
{¶ 60} The fifth assignment of error is overruled.
SIXTH ASSIGNMENT OF ERROR
{¶ 61} "THE TRIAL COURT IMPOSED A SENTENCE THAT WAS EXCESSIVE AND CONTRARY TO LAW."
{¶ 62} Per R.C. 2953.08(G)(2), our standard of review on appeal is not whether the sentencing court abused its discretion. Statev. Lofton (Jan. 16, 2004), Montgomery App. No. 19852,2004-Ohio-169; R.C. 2953.08(G)(2). Rather, we may increase, reduce, or otherwise modify a sentence that is appealed or vacate the sentence and remand the matter for resentencing if we clearly and convincingly find either (1) that the record does not support the sentencing court's findings under the relevant statute,[1] or (2) that the sentence is otherwise contrary to law. State v. Furrow (September 24, 2004), Champaign App. No. 03-CA-19, 2004-Ohio-5272.
{¶ 63} In challenging his sentence Defendant does not argue that the trial court failed to follow some required procedure to impose the sentence it selected. Rather, he argues that his sentence was excessive or too harsh in light of his co-defendant, Chante Shackleford's, extensive role in these offenses, and the fact that she received only a four year prison term while Defendant received ten years.
{¶ 64} The trial court explained that Chante Shackleford's four year sentence had been jointly recommended by the parties. More importantly, as the court pointed out, Defendant has a more extensive record of prior criminal convictions than Shackleford has, and on that basis the court found that Defendant poses a greater risk of recidivism and danger to the community than Shackleford. The court is charged by R.C. 2929.11(A) and2929.12(D)(2) to consider a defendant's record in choosing a sentence to impose. That supports the more onerous sentence the court imposed on Defendant, relative to Shackleford's sentence. We find no error of law.
{¶ 65} The sixth assignment of error is overruled. The judgment of the trial court will be affirmed.
Wolff, J. And Fain, J., concur.
[1] This alternative has been diminished or narrowed in its application by State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856.