OPINION
{¶ 1} This matter is before the court on the Notice of Appeal of Reginald Gardner, Jr., filed November 10, 2005. On May 18, 2005, Gardner was indicted by a Montgomery County grand jury on one count of aggravated burglary, in violation of R.C. 2911.11(A)(2), with a firearm specification, one count of felonious assault, in violation of R.C.2903.11(A)(2), with a firearm specification, and one count of burglary, in violation of R.C. 2 2911.12(A)(2). On July 21, 2005, Gardner filed a motion to suppress, which the trial court overruled on August 24, 2005, after a hearing. Following a jury trial, Gardner was found not guilty of felonious assault and burglary and convicted of aggravated burglary with a firearm specification. The trial court sentenced Gardner to three years for aggravated burglary and three years for the firearm specification, to be served consecutively.
 {¶ 2} The events giving rise to this matter began on Monday, April 25, 2005, when Ebony Lee phoned Gardner and asked to buy some marijuana from him. Gardner and Turell Justice arrived at Lee's home 30 minutes later, at 1024 Danner Ave. in Dayton, and Lee was sitting on her porch. According to Lee, when Gardner displayed an amount of marijuana to her, Justice asked Gardner to give some of it to him. Gardner refused, stating, "'Man, nah, I just lost a spank. These niggers just got me for $150.00,' screaming and hollering." Lee's boyfriend, James Pippins, was inside Lee's home, along with Lee's three young children. Upon hearing yelling outside, Pippins, concerned that Gardner was yelling at Lee, came out on the porch and told Gardner to back away. Lee testified that she asked Pippins whom he was speaking to, and Pippins indicated that he was speaking to Gardner. Lee then told Pippins that Gardner was addressing Justice, and not her. Before Pippins could get back inside, Gardner and Justice jumped onto the porch and Gardner began to yell at Pippins. According to Lee, Pippins said, "Man, if you wasn't talking to my girl, it don't even matter." Pippins went inside, and Lee testified that Gardner said, "I'll kill that nigger."
 {¶ 3} Lee decided she did not want any marijuana and opened the door to go inside. Gardner forcefully grabbed the screen door from her hand, and Lee testified that she told him not to come inside. Gardner continued to yell at Pippins, and Lee testified "then [Pippins] made a comment to him, `I ain't no bitch. You ain't going to keep standing there talking to me like that.'" Gardner pushed Lee out of the way and took a swing at Pippins. Justice also entered the residence. Pippins slammed Gardner to the floor, and Justice attempted to join the fight. Lee stated she grabbed Justice's shirt, and "[w]hen he couldn't get past me to jump in the fight, that's when he stepped back and lifted up his white tee-shirt and pulled a gun out of the front of his pants." According to Lee, Justice pointed the gun at Pippins' back while Pippins was on top of Gardner.
 {¶ 4} Pippins got off of Gardner and went upstairs. Lee's children were running through the residence screaming. Pippins then started back downstairs with an iron in his hand. Lee stated that she told him to stay upstairs because Justice had a gun. According to Lee, Gardner said, "'Man, don't nobody want that bitch. You think somebody wants her. Don't nobody want that bitch." Pippins, back downstairs, hit Gardner in the mouth with his fist.
 {¶ 5} Gardner repeatedly asked Justice to give him the gun. Justice refused, and according to Lee, Justice said, "'No, we got three kids in here. I got three kids, I know how it is. We going to catch this nigger in the `hood. We going to kill him." Gardner and Justice then departed. The police were called and responded to Lee's residence. After the police left to look for Gardner and Justice, Lee called her mother, her brother, and her father, all of whom came to Lee's home, along with Lee's cousin, Melissa. Lee decided to take her children to her mom's house because she did not feel safe.
 {¶ 6} Lee put her children in Melissa's car, but before they could leave, she testified that she observed Gardner and Justice returning to her apartment complex with a group of eight people. According to Lee, Gardner said, "'Yeah, I'm back now mother-fucker. I got my killers with me, we going to kill you tonight. You don't know who you can fuck with, nigger." Lee's mother called the police. Pippins remained in the apartment, and he and Gardner exchanged words. Lee and her mother got into Melissa's car with the children and drove to a nearby parking lot to wait for the police. Pippins closed the door, and according to Lee, she observed Gardner forcefully kick her door in. Gardner entered Lee's home and chased Pippins out the front door.
 {¶ 7} The other people with Gardner ran to the front of the apartment. Melissa drove onto Danner Ave. and Lee observed Justice fire five or six shots at Pippins as he fled. Lee's neighbor, Laquita Hart, also testified that she observed Gardner shooting at Pippins.
 {¶ 8} Gardner asserts five assignments of error. His first assignment of error is as follows:
 {¶ 9} "APPELLANT'S CONVICTIONS FORAGGRAVATED BURGLARY AND THE GUN SPECIFICATION ASSOCIATED WITH THE AGGRAVATED BURGLARY ARE AGAINST THE SUFFICIENCY AND/OR MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 10} Although both are raised by Gardner in a single assignment of error, "a challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." State v.McKnight, 107 Ohio St.3d 101, 112, 837 N.E.2d 315, 2005-Ohio-6046. "In reviewing a claim of insufficient evidence, [t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' (Internal citations omitted). A claim that a jury verdict is against the manifest weight of the evidence involves a different test. `The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. (Internal citations omitted).
 {¶ 11} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v.DeHass (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212. "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness."State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288.
 {¶ 12} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict.State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 13} Aggravated burglary is defined as follows:
 {¶ 14} "(A) No person by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than the accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply:
 {¶ 15} "(1) The offender * * * threatens to inflict physical harm on another;
 {¶ 16} "(2) The offender has a deadly weapon * * * on or about his person."
 {¶ 17} The firearm specification required the State to prove that while committing the aggravated burglary offense, Gardner had a firearm on or about his person and displayed the firearm or used it to facilitate the offense. R.C. 2941.145.
 {¶ 18} If a person acting with the kind of culpability required for the offense aids or abets another in committing the offense, that person is guilty of complicity and may be prosecuted and punished the same as the principal offender. R.C. 2923.03(A)(2), (F). Intent can and must be inferred from the circumstances surrounding the crime. State v.Johnson, 93 Ohio St.3d 240, 2001-Ohio-1336. Aid or abet means to support, help, assist, cooperate with or encourage. Id.
 {¶ 19} Gardner argues that the force element necessary to prove a burglary was not established by the State. The evidence presented by the State, when viewed in a light most favorable to it, shows that Gardner got into a verbal argument with Pippins and began threatening him, and that Lee told him to leave. Gardner then forcefully grabbed the door from Lee, shoving her out of the way, entering the residence and attacking Pippins. After leaving the residence, Gardner soon returned, kicked in the door, and fired shots at Pippins as he fled. A rational trier of fact could find all of the essential elements of aggravated burglary proven beyond a reasonable doubt, including the force element; Gardner grabbed the door, shoved Lee, attacked Pippins, and he later kicked in the door. In other words, Gardner's conviction is supported by legally sufficient evidence.
 {¶ 20} Gardner's conviction is also not against the manifest weight of the evidence. The credibility of the witnesses and the weight to be given their testimony are matters for the jury to resolve. Gardner presented no evidence, and the jurors did not lose their way simply because they chose to believe the State's witnesses, which they had a right to do. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a conviction, or that a manifest miscarriage of justice has occurred. Gardner's first assignment of error is overruled.
 {¶ 21} Gardner's second assignment of error is as follows:
 {¶ 22} "APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL"
 {¶ 23} "Claims of ineffective assistance of counsel are assessed according to the two part test articulated in Strickland v.Washington (1984), 466 U.S. 668. "In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's errors, the result of the proceeding would have been different."State v. Kidd, Clark App. No. 2005-CA-37,2006-Ohio-4008. Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of reasonable assistance. * * * Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspectiveat the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." State v. Parrish, Montgomery App. No. 21206, 2006-Ohio-4161.
 {¶ 24} "(A) single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."State v. Price (1979), 60 Ohio St.2d 136, 141, 398 N.E.2d 772
(internal citations omitted).
 A. Failure to Request Appropriate Jury Instructions
 1. Other Acts Limiting Instruction 8
 {¶ 25} Gardener argues that he "was deprived of effective assistance of counsel through Defense Counsel's failure to request an `other acts' limiting instruction and for failing to object when the Trial Court intentionally omitted it from the jury charge." Specifically, Gardner argues that the evidence before the jury that Gardner planned to sell marijuana to Lee indicated that Gardner has a propensity to commit crime.
 {¶ 26} Counsel's decision not to request a limiting instruction may have been a strategic decision in order to avoid drawing further attention to Gardner's criminal conduct. Even if counsel should have requested a limiting instruction, Gardner still must prove that he was prejudiced by counsel's failure before he can prevail on a claim of ineffective assistance of counsel. The fact that Gardner was not convicted of felonious assault and burglary indicates that the jury did not convict him of aggravated burglary simply because his possession of marijuana shows a propensity to commit crime. Given the evidence discussed above, we conclude that it is unlikely that the lack of a limiting instruction caused the jury to convict Gardner of aggravated burglary. In other words, it is unlikely that Gardner would have been acquitted had his counsel requested and received a limiting instruction.
2. Instruction Relating to Aggravated Burglary
 {¶ 27} For the reasons discussed in response to Gardner's Fourth Assignment of Error, the trial court committed plain error when it instructed the jury on the law of aggravated burglary. Because this matter is reversed and remanded for a new trial on that basis, we need not reach the merits of Gardner's argument herein.
3. Instruction Relating to Juror's Note Taking
 {¶ 28} Gardner complains about counsel's failure to object to the trial court's jury instruction regarding note taking by the jurors. Gardner argues that the trial court "invited jurors to entirely disregard the opinions of note takers."
 {¶ 29} A review of the record reveals that Gardner's claim is a misrepresentation of the meaning of the court's instruction. The court's instruction on note taking in its entirety is as follows:
 {¶ 30} "Do not hesitate to change an opinion if convinced that it is wrong. However, you may not surrender honest convictions in order to be congenial or to reach a verdict solely because of the opinion of other jurors.
 {¶ 31} "The court permitted those jurors who desired to take notes to do so. The taking of notes should not have diverted your attention from what was said or what happened in the courtroom during the trial, since some people believe that the taking of notes distracts a person's attention and interferes with hearing all of the evidence. No juror was required to take notes and this was entirely a matter of personal choice for each juror. The jurors who chose not to take notes must not be influenced by those who did take notes.
 {¶ 32} "The fact that the notes taken by a juror support his or her recollection in no way makes that juror's memory more reliable than that of the jurors who did not take notes. Notes are merely a memory aid and must not take precedence over your independent memory of the facts. You will be allowed to take your notes to the jury room, and all notes will be returned to the bailiff to be destroyed when the jury is discharged."
 {¶ 33} When properly viewed in the context of the entire charge, the court's instruction did not say that jurors who did not take notes should entirely disregard the opinions of those who did. Rather, the instruction simply indicated that the mere fact that a particular juror took notes should not cause other jurors who did not to give that person's opinion any extra or added weight. Accordingly, counsel's failure to object did not fall below an objective standard of reasonableness and cannot form the basis of a claim of ineffective assistance.
B. Failure to Correct the Prosecutor's Misstatements of the Law During Voir Dire and Closing Argument
 {¶ 34} During voir dire, the Prosecutor told the jury that they were "here only to decide what the elements of the crime are, whether or not we've proven them by proof beyond a reasonable doubt." Gardner argues that he received ineffective assistance when his counsel failed to object to the State's misstatement of the jury's role. The trial court, however, instructed the jury as follows before voir dire began: "You will receive the facts from the witness stand and through exhibits. The rules of law, or the instructions of law as they are called, will be given to you by the Court, and it is your sworn duty to accept and apply these rules as given to you." The trial court's instructions, not counsel's statements, govern the law to be applied in the case, and it is presumed that the jury will follow the trial court's instructions.State v. Loza (1994), 71 Ohio St.3d 61, 75, 641 N.E.2d 1082; Statev. Henderson (1988), 39 Ohio St.3d 24, 33, 528 N.E.2d 1237. Accordingly, counsel's failure to object did not fall below an objective standard of reasonableness.
 {¶ 35} Gardner also argues that his counsel was ineffective for failing to object to a misstatement of the law by the prosecutor during closing argument regarding aiding and abetting. The prosecutor explained the principle of aiding and abetting to the jury as follows:
 {¶ 36} "There's an aggravated burglary there committed with a firearm. The judge is going to charge you on aiding and abetting. He's going to tell you aiding and abetting basically means to help or to assist, and what one does, that equally applies to the other, and vice-versa. Remember we talked about that. So what one does, we can apply to the other and what the other does, we can apply that to the other one. That's the law in the State of Ohio that you're sworn to accept."
 {¶ 37} Gardner argues that the prosecutor misstated the law of aiding and abetting because he neglected to mention that the aider and abettor must "knowingly" help, assist, or encourage another in committing the offense. In other words, the complicitor must act with the kind of culpability required for the commission of the offense. R.C.2923.03(A)(2). More specifically, Gardner claims that the witnesses did not see Gardner with a gun "at the scene of the aggravated burglary," but only Justice, and that Gardner was not aiding and abetting Justice. According to Gardner, absent objection by counsel, the jury could have been led to believe that "either of the parties were aiders and abettors whether or not they had the requisite intent and whether or not they were acting in concert."
 {¶ 38} A review of the record shows that the prosecutor told the jurors that the court would instruct them on aiding and abetting. The trial court did in fact correctly instruct the jury on the law of aiding and abetting. The trial court's instructions, not counsel's statements during closing argument, govern the law to be applied in the case, and it is presumed that the jury will follow the trial court's instructions.Loza; Henderson, supra. Accordingly, counsel's failure to object to the prosecutor's description of aiding and abetting did not fall below an objective standard of reasonableness.
C. Failure to Object to Inappropriate Argument by the State
 {¶ 39} Gardner argues that the prosecutor's suggestion in closing that Gardner had been drinking was not established by the evidence and that, given counsel's failure to object, "jurors were invited to impermissibly speculate about the circumstances of the incident to Appellant's prejudice."
 {¶ 40} Lee testified that Justice responded to Gardner's claim that he had lost some "spank" by saying, "Man, you drunk." During closing argument, the prosecutor discussed Pippins' concerns for Lee when he heard Gardner arguing with Justice, stating, "The problem was with Reginald Gardner. That didn't set well with him. He took issue with it. He felt this was an affront on him. Maybe it was because he had been drinking or liquored up or whatever the reason. Maybe that's his personality. Maybe his personality is to be aggressive." The prosecutor's suggestion that Gardner had been drinking was based upon evidence presented at trial and fell within the wide latitude afforded to prosecutors during closing argument. State v. Smith,97 Ohio St.3d 367, 2002-Ohio-6659, 780 N.E.2d 221. (Internal citation omitted).
 {¶ 41} Gardner's second assignment of error is overruled.
 {¶ 42} Gardner's third assignment of error is as follows:
 {¶ 43} "APPELLANT WAS DEPRIVED OF DUE PROCESS AND A FAIR TRIAL THROUGH PROSECUTORIAL MISCONDUCT."
 {¶ 44} Gardner argues that the prosecutor misstated the law with respect to aiding and abetting in his closing argument. Gardner also argues that, "during voir dire, the Prosecutor informed the jury that its function was to decide what the elements of the offense are."
 {¶ 45} In analyzing claims of prosecutorial misconduct, the test is "whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." State v. Jones,90 Ohio St.3d 403, 420, 2000-Ohio-187. (Internal citations omitted). "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting Smith v. Phillips (1982),455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78. Where it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. See State v.Loza (1994), 71 Ohio St.3d 61, 78, 1994-Ohio-409. In reviewing allegations of prosecutorial misconduct, we review the alleged wrongful conduct in the context of the entire trial. Darden v. Wainwright (1986),477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144.
 {¶ 46} Generally, prosecutors are entitled to considerable latitude in opening statement and closing argument. State v. Ballew,76 Ohio St.3d 244, 255, 1996-Ohio-81; State v. Stevens, Montgomery App. No. 19572,2003-Ohio-6429. In closing argument, a prosecutor may comment freely on "what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Lott (1990), 51 Ohio St.3d 160, 165,555 N.E. 2d 293, quoting State v. Stephens (1970), 24 Ohio St. 2d 76, 82,263 N.E.2d 773. "Moreover, because isolated instances of prosecutorial misconduct are harmless, the closing argument must be viewed in its entirety to determine whether the Defendant has been prejudiced." Stephens, supra, citing Ballew and State v. Lorraine (1993), 66 Ohio St.3d 414, 420,613 N.E.2d 212. Failure to object to alleged misconduct waives all but plain error for purposes of appellate review. State v. Wickline (1990),50 Ohio St.3d 114, 119-20, 552 N.E.2d 913.
A. Misstatement of the Law
 {¶ 47} Counsel for Gardner failed to object to the prosecutor's remarks, waiving all but plain error herein. The trial court properly instructed the jury on the law of aiding and abetting. Given the context of the entire trial, it is clear beyond a reasonable doubt, for the reasons discussed in response to Gardner's first assignment of error, that the jury would have found Gardner guilty of aggravated burglary in the absence of the prosecutor's remarks regarding aiding and abetting. Further, we cannot say that the prosecutor's remark during voir dire, in the context of the entire trial and the court's instructions, prejudiced Gardner's substantial rights. There being no plain error, Gardner's argument lacks merit.
B. Inappropriate Argument
 {¶ 48} Gardner argues that it was prosecutorial misconduct for the State to suggest in its closing argument that Gardner had been drinking. As discussed above, Lee provided testimony that Justice accused Gardner of being drunk. There being no plain error, Gardner's argument lacks merit.
C. Failure to Correct Inaccurate Jury Instructions
 {¶ 49} According to Gardner, "certain errors were present in the jury instructions. It was incumbent upon the State to call the Trial Court's error to its attention." As discussed in response to Gardner's Fourth Assignment of Error, the trial court committed plain error when it instructed the jury on the law of aggravated burglary. Because this matter is reversed and remanded for a new trial on that basis, we need not reach the merits of Gardner's argument herein.
 {¶ 50} Gardner's fourth assignment of error is as follows:
 {¶ 51} "THE TRIAL COURT DEPRIVED APPELLANT OF A FAIR TRAIL AND DUE PROCESS OF LAW BY FAILING TO PROPERLY INSTRUCT THE JURY." 15
 {¶ 52} Gardner argues that the trial court improperly instructed the jury regarding the offense of aggravated burglary. The trial court instructed the jury on aggravated burglary as follows:
 {¶ 53} "In Count Three of the indictment, Mr. Reginald Gardner is charged with aggravated burglary. Before you can find Mr. Gardner guilty of this offense, you must find beyond a reasonable doubt that on or about April 25, 2005, in Montgomery County, Ohio, he did by force, stealth or deception, trespass in an occupied structure, to-wit, a residence located at 1024 Danner Avenue, Apartment B, or in a separately secured or separately occupied portion of the occupied structure, when another person, other than an accomplice of the offender, was present, with the purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, and did have a deadly weapon or dangerous ordnance, to-wit, a handgun, on or about his person or under his control."
 {¶ 54} The trial court's instruction tracked the language of the aggravated burglary section, R.C. 2911.11(A)(2), which prohibits trespass in an occupied structure with a purpose to commit "any criminal offense" while inside. Gardner agues that by failing to specify the underlying criminal offense he had a purpose to commit, the court's instruction permitted the jurors to return a verdict of guilty on a finding that he had a purpose to commit some criminal offense, but without necessarily arriving at a unanimous agreement about what that offense was, depriving Defendant of his due process right to a unanimous verdict required by Crim. R. 31(A).
 {¶ 55} Gardner failed to object at trial to the trial court's jury instruction on aggravated burglary. Thus, for purposes of appellate review Gardner has waived all but plain error. Wickline, supra;State v. Parrish (Aug. 11, 2006), Montgomery App. No. 21206,2006-Ohio-4161.
 {¶ 56} In State v. Wamsley (Oct. 2, 2006), Columbiana App . No. 05CO11, 2006-Ohio-5303, the court held that the trial court's failure in its jury instructions on aggravated burglary to include any instructions identifying the underlying criminal offense Defendant allegedly had a purpose to commit when he trespassed in the occupied structure constitutes plain error. In Wamsley, as in this case, the trial court's instruction on aggravated burglary closely tracked the statutory language in R.C. 2911.11(A), requiring that a person have a purpose to commit any criminal offense in the occupied structure. Neither inWamsley nor in this case, however, did the trial court specify any particular underlying criminal offense the defendant had a purpose to commit or define its elements for the jury.
 {¶ 57} Wamsely pointed out that the standard Ohio Jury Instructions relating to aggravated burglary, Section 511.11, require the trial court to instruct the jury on the elements of the applicable underlying criminal offense. Wamsley also distinguished on its facts the only other case found discussing this issue, State v. Dimitrov (Feb. 15, 2001), Cuyahoga App. No. 76986, 2001-Ohio-4133. Dimitrov held that the trial court did not err when it failed to include in its instructions on burglary an instruction identifying the specific underlying criminal offense that Defendant had a purpose to commit when he trespassed in the occupied structure. Although the trial court did not instruct the jury on the elements of any particular underlying offense, the court inDimitrov nevertheless stated in its instructions:
 {¶ 58} "Now, I haven't defined any criminal offense but you can use your common sense of theft. Anything can be a criminal offense, anything. Theft is sufficient here to find in this case."
 {¶ 59} The Wamsley court determined that this instruction inDimitrov explained what the jury needed to find: that theft could constitute the underlying criminal offense, and therefore the instruction gave the jury sufficient information to determine the criminal offense that Defendant had a purpose to commit. The trial court's instruction in this case, like the instruction inWamsley, does not satisfy even the minimal requirements ofDimitrov, because there was no explanation or suggestion by the court as to what crime could constitute the underlying criminal offense that would prove the "purpose to commit * * * any criminal offense" element of aggravated burglary.
 {¶ 60} As it is used in R.C. 2911.11(A), the phrase "any criminal offense" has a dual role. It functions to allow any statutory offense to serve as the underlying offense a trespasser had the purpose to commit. And, it modifies the word "purpose" to define the nature of that element of the offense of aggravated burglary. In order to find a violation of R.C. 2911.11(A)(1) or (2), the jury must find that the required purpose existed, and in order to make that finding the jury must unanimously agree on the particular underlying offense which the purpose concerned. Therefore, the court's instructions must identify the underlying offense and its elements. If the instruction merely tracks the language of R.C.2911.11(A) to permit a guilty verdict on a finding of a purpose to commit "any criminal offense," the jury necessarily must speculate on what the underlying criminal offense was.
 {¶ 61} The failure of the trial court in its instructions to the jury to designate and define the elements of the underlying criminal offense Defendant had a purpose to commit constitutes a failure to instruct the jury on all of the essential elements of the offense charged, which violates his right to due process and constitutes reversible error, even in the absence of an objection. Wamsley, supra; State v. Smith (Jan. 20, 1989), Portage App. No. 1720; Hoover v. Garfield Heights Mun. Ct. (C.A. 6, 1986), 802 F.2d 263. The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. In reWinship (1970), 397 U.S. 358, 90 S. Ct. 1068, 25 L.Ed. 2d 368. If the jury is not instructed on every essential element of the offense charged, it cannot find beyond a reasonable doubt every fact necessary to constitute the crime charged, and the Winship principle is violated.Hoover, supra.
 {¶ 62} In State v. Griffin (July 15, 2005), Montgomery App. No. 20681,2005-Ohio-3698, we recognized that the jury's verdict as to which underlying offense Defendant had a purpose to commit for purposes of aggravated burglary must be unanimous, although we held that the failure to give a special unanimity instruction in that regard does not constitute plain error where the court gave a general unanimity instruction, and although the court instructed the jury on alternative underlying offenses that might apply, the evidence was sufficient to support a conviction based upon at least one of them.
 {¶ 63} The State of Ohio asserts that the holding in Shad v.Arizona, 501 U.S. 624, 632, 111 S.Ct. 2491, 115 L.Ed. 555, that "there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict," applies to the trial court's failure in Gardner to instruct the jury on the particular underlying offense that the defendant had a purpose to commit when he trespassed in an occupied structure.
 {¶ 64} The statute in issue in Shad specifically enumerated several means by which first degree murder may be committed, providing, "A murder which is perpetrated by means of poison or lying in wait, torture or by any other kind of wilful, deliberate or premeditated killing, or which is committed in avoiding or preventing lawful arrest or effecting an escape from legal custody, or in the perpetration of or attempt to perpetrate, arson, rape in the first degree, robbery, burglary, kidnaping, or mayhem, or sexual molestation of a child under the age of thirteen years, is murder of the first degree." Shad, at 629.
 {¶ 65} The Shad court determined that the issue before it was "one of the permissible limits in defining criminal conduct, as reflected in the instructions to jurors applying the definitions, not one of jury unanimity." Shad at 631. In determining that the jury in Shad was not required to agree on one of the alternative theories of premeditated and felony murder, it was significant to the Supreme Court that "the Arizona Supreme Court has effectively decided that, under state law, premeditation and the commission of a felony are not independent elements of the crime, but rather are mere means of satisfying a singlemens rea element."Shad, at 637. There has been no authoritative determination by the Ohio Supreme Court that "any criminal offense" that a defendant had a purpose to commit is a mere means of satisfying the mens rea of aggravated burglary. "Any criminal offense" is an underlying criminal act with independent elements that must be proven beyond a reasonable doubt to satisfy a defendant's right to due process. In other words, the issue before us in Gardner, unlike in Shad, is precisely one of jury unanimity. "[N]othing in our history suggests that the Due Process Clause would permit a State to convict anyone under a charge of `Crime' so generic that any combination of jury findings of embezzlement, reckless driving, murder, burglary, tax evasion, or littering, for example, would suffice for conviction." Shad, at 633. The requirement of unanimity would not attach to the alternative means by which aggravated burglary may be committed (i.e. force with screw driver vs. force with a hammer) but does attach to the elements of the specific crime the accused had the purpose to commit in the dwelling. In order to find a violation of R.C. 2911.11, the jury must unanimously agree on the particular underlying offense which the defendant had a purpose (a specific mens rea) to commit. The holding in Shad has no application to the trial court's failure to properly instruct the jury on the elements of Gardner's underlying offense, as it is not a form of alternative means (such as force, stealth or deception) but rather purposeful conduct to commit an underlying crime defined by specific elements. To conclude otherwise would be a departure from "an American tradition that is deep and broad and continuing." Shad, at 650 (Scalia, concurring in part and concurring in the judgment).
 {¶ 66} The practical effect of applying Shad to Gardner would permit a trial judge to instruct a jury on a plethora of possible underlying offenses, such as theft, domestic violence, arson, rape or murder. Then any combination of jury findings supporting the distinct underlying offense would suffice for conviction, regardless of whether or not the findings were unanimous. Such a result is clearly prohibited by a defendant's guarantee of due process, as well as the specific intent implicit in the defendant's purpose for entering.
 {¶ 67} Because the trial court did not instruct the jury concerning any underlying offense Gardner may have had a purpose to commit, and where, as here, the verdict form does not contain a separate finding regarding that matter, the record does not demonstrate that the jury unanimously agreed upon the identity of that underlying offense Gardner had a purpose to commit. Under those circumstances, a manifest injustice occurred and plain error exists. State v. Adams (1980),62 Ohio St.2d 151, 404 N.E.2d 144. Accordingly, the judgment of the trial court will be reversed and this cause remanded for a new trial. Gardner's fifth assignment of error is as follows:
 {¶ 68} "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS APPELLANT'S INVOLUNTARY STATEMENT."
 {¶ 69} Gardner moved to suppress the statements that he made to Detective Bullens on May 11, 2005, arguing that Gardner did not voluntarily waive his Miranda rights and that the statements were not made voluntarily. At the hearing on the motion to suppress, Gardner testified that he contacted Bullens after learning that a warrant had been issued for his arrest. According to Gardner, Bullens told him that if he would come to the jail and speak with him about the incident, Bullens would have the warrant withdrawn. Gardner testified that he was read the pre-interview form and that he understood his rights and agreed to waive them. Gardner argued that Bullens did not withdraw the warrant and arrested Gardner. Bullens testified that he did not tell Gardner that the warrant would be withdrawn.
 {¶ 70} As the trial court correctly noted, "[t]he voluntariness of a suspect's statement has always been the basic constitutional test for admissibility." "'To be knowing, intelligent and voluntary, the relinquishment of [Miranda] rights must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception, and the waiver must have been made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'"State v. Abner, Montgomery App. No. 20661, 2006-Ohio-4510. "A suspect's decision to waive his privilege against self-incrimination is made voluntarily, absent evidence that his will is overborne and his capacity for self-determination was critically impaired because of coercive police conduct." State v. Otte, 74 Ohio St.3d 555, 562,660 N.E.2d 711,1996-Ohio-108. "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v. Winterbotham, Greene App. No. 05CA100, 2006-Ohio-3989.
 {¶ 71} As the trial court correctly indicated, even if Gardner's version of his interview with Bullens is accurate, Gardner voluntarily reported to Bullens, acknowledged and waived his rights, and made a statement to Bullens. There was nothing before the trial court to suggest that Gardner's will was "overborneand his capacity for self-determination was critically impaired" due to Bullens' conduct. We agree with the trial court that, considering the totality of the circumstances, the State established that Gardener's statements were voluntary. Gardner's fifth assignment of error is overruled.
Judgment reversed and remanded for proceedings consistent with this opinion
FAIN, J., and GRADY, J., concur.