OPINION
{¶ 1} Defendant-Appellant, Ronald A. Smith, appeals a judgment of the Montgomery County Common Pleas Court finding him guilty of Aggravated Burglary and Aggravated Robbery and sentencing him to twenty years. In case number 21463, Smith *Page 2 
asserts that the trial court erred in instructing the jury on aggravated burglary; that the verdicts were contrary to the manifest weight of the evidence; that the trial court erred in allowing previously suppressed eyewitness identification evidence; that the court erred in allowing the victim to make an in-court identification of him; that he had ineffective counsel; and that the trial court erred in sentencing him to more than minimum concurrent sentences. In case number 22334, Smith claims that the trial court erred in overruling his motion for a new trial. Smith also filed two supplemental briefs arguing that his sentence was based on convictions that were later reversed, and that the indictments for both Aggravated Burglary and Aggravated Robbery were defective.
 {¶ 2} We determine that the jury did not lose its way in returning the guilty verdicts; that there was no error in the trial court's instructions to the jury, nor in the evidentiary issues raised; that he was not denied effective assistance of counsel, and that he waived anyBlakely error in sentencing. We further determine that Smith's indictments were not defective; that he failed to establish that his sentence was based upon convictions that were subsequently reversed; that the motion for new trial was not timely filed and that he failed to establish that he was unavoidably prevented from discovering the evidence. Therefore, we affirm the judgment of conviction and sentence herein.
 {¶ 3} During the evening hours of September 27, 2004, two African-American males, one identifying himself as "Little Ronnie," kicked in the front door of Latisha Robinson's apartment and entered. The man identifying himself as Little Ronnie,, was armed with a gun. He got in her face and demanded to know where her boyfriend, Corey Pullings, was. The other man went to her back door and opened it, allowing three *Page 3 
additional men to enter the apartment.
 {¶ 4} When Robinson denied any knowledge of Pullings, Little Ronnie went upstairs in the apartment, tearing the handrail off the wall, and he went into Robinson's bedroom putting the gun to her son's head. He then demanded Robinson give him something to get him to leave. Robinson gave one of the men sixty dollars and her cell phone.
 {¶ 5} Meanwhile, the four men downstairs ransacked Robinson's apartment, toppling furniture and rummaging through boxes, throwing things to the floor. The men took additional items from the apartment, including radios and CD's. During the ransacking of the apartment, the gunman, who repeatedly identified himself as "Little Ronnie," and Robinson were engaged in a confrontation in the dining room where he attempted to force Robinson to lay on the floor "like execution style." Finally, after the other men exited the apartment, "Little Ronnie" ran out, too.
 {¶ 6} Robinson then escaped to a neighbor's apartment, where the police were called. The next day, Detective Ward, of the Montgomery County Sheriff's Office prepared a photo spread containing a picture of Ronald Smith, the only individual the detective knew that called himself "Little Ronnie." Robinson could not identify anyone in the photo spread. Subsequently, when Robinson was viewing serial photos on the detective's computer screen, a photo of Smith came up, showing his gold teeth that were not displayed in the prior photo. Robinson indicated that this picture of Smith "could possibly be the person who was in [her] house."
 {¶ 7} Subsequently, a neighbor, who had opened his door while Smith and the others were knocking at Robinson's door, immediately picked out Smith from a photo *Page 4 
spread as the man at her door, and who had identified himself as Little Ronnie.
 {¶ 8} Smith was arrested. After being Mirandized, Smith admitted that he and four others went to Robinson's apartment looking for Corey Pullings, but claimed that he left after being told that he was not there. He claimed that one of the other men kicked in the door and entered, but denied that he ever entered the apartment. Prior to trial, Smith made a number of phone calls attempting to get Robinson to take a payoff to drop the charges, and attempting to set up an excuse for why he was in the area.
 {¶ 9} After Smith filed a suppression motion, the trial court suppressed Robinson's identification of the photo of Smith on the computer screen, finding that it was unnecessarily suggestive and unreliable.
 {¶ 10} Smith was tried by a jury and convicted on both counts. The trial court sentenced him to ten years on each count to be served consecutively to each other and concurrent to a sentence in another case that was subsequently reversed. Smith timely filed his appeal of these convictions.
 {¶ 11} Approximately seventeen months after the verdict, Smith filed a motion for a new trial. Attached to the motion was an affidavit from LaQwan Scandrick who claimed that he was the "Li'l Ronnie" who committed the aggravated burglary and aggravated robbery of Robinson on September 27, 2004. The trial court overruled the motion without a hearing. Smith has also timely appealed this judgment.
 {¶ 12} In his consolidated appeal from these judgments, Smith sets forth nine assignments of error for our consideration.
 FIRST ASSIGNMENT OF ERROR — CASE NO. 21463 *Page 5 {¶ 13} THE TRIAL COURT ERRED WHEN INSTRUCTING THE JURY REGARDING AGGRAVATED BURGLARY.
 {¶ 14} In his first assignment of error, Smith claims that the trial court erred when it failed to identify the underlying offense, which was an element of the charge of aggravated burglary, in its instructions to the jury. Smith relies on our holding in State v. Gardner, Montgomery App. No. 21357, 2007-Ohio-182, to support his proposition. However, Smith fails to note that our decision in Gardner was reversed by the Ohio Supreme Court. See State v. Gardner, 118 Ohio St.3d 420,2008-Ohio-2787.
 {¶ 15} Furthermore, Smith failed to object to the instructions on aggravated burglary in the trial court. And, it is well settled that "[o]n appeal, a party may not assign as error the giving or failing to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim. R. 30(A). See also State v.Jones (2001), 91 Ohio St.3d. 335, 347; State v. Keenan (1998),81 Ohio St.3d 133, 151.
 {¶ 16} In Gardner, 118 Ohio St.3d at 433, the Supreme Court stated that " * * * Ohio's burglary statutes proscribe a single crime that may be carried out in more than one manner or method. As the court explained in State v. Hammer (1997), 216 Wis. 214, 220, 576 N.W.2d 285, `the language of the [burglary] statute indicates that the crime here is one single offense with multiple modes of commission. The pertinent language states that burglary is committed when an actor unlawfully enters a dwelling with an "intent to * * * commit a felony." The statute does not set forth any alternatives with respect to the intent element. The language indicates that the emphasis is on the fact that the defendant had the intent to commit a felony and it does not matter which *Page 6 
felony formed the basis of that intent. There are different means of accomplishing this crime, but the different ways do not create separate and distinct offenses.'"
 {¶ 17} Therefore, because Smith waived any error, and because we find that the trial court committed no error in this instruction, the first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR — CASE NO. 21463 {¶ 18} MR. SMITH'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 19} In this assignment of error, Smith claims that his convictions were against the manifest weight of the evidence because he says that the victim, Robinson, could not identify him in the first photo array, and because of this failure, the evidence clearly establishes that he was not the "Little Ronnie" who was the perpetrator of these crimes.
 {¶ 20} Smith attempts to discount the other witness who identified him at the scene of the crime, Robinson's voice identification of him, and her in-court identification of him, as well as his admission that he was at the apartment on the evening in question.
 {¶ 21} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175
 {¶ 22} Additionally, in considering the manifest weight of the evidence, we must *Page 7 
act, in effect, as a `"thirteenth juror,"' reconsidering the resolution of testimony and evidence as found by the trier of fact.Thompkins , 78 Ohio St.3d at 387. A reversal on the manifest weight of the evidence is reserved for the exceptional case where the evidence presented weighs heavily in favor of the defendant. State v. Otten,33 Ohio App.3d 339, 340. "`A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact.'" State v. Urbin, 148 Ohio App.3d 293, 2002-Ohio-3410, at ¶ 26, quoting State v. Haydon (Dec. 22, 1999), 9th Dist. No. 19094, at 14, further appeal not allowed (2000), 88 Ohio St.3d 1482. Additionally, it is well established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts."State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 23} After reviewing the entire record, we find that the jury did not clearly lose its way in convicting Smith of the charges. Accordingly, the second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR — CASE NO. 21463
 {¶ 24} THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO INTRODUCE THE PREVIOUSLY SUPPRESSED EYEWITNESS IDENTIFICATION.
 {¶ 25} In this assignment of error, Smith criticizes the trial court's decision to allow Detective Ward to testify as to the photo identification proceedings that occurred on September 28, 2004 at the Montgomery County Sheriff's Office, including the "possible" identification of one particular photo of Smith. This is the identification that the trial court had previously suppressed.
 {¶ 26} In ruling on the motion to suppress, the trial court suppressed Robinson's *Page 8 
pretrial identification of Smith on the basis that it was merely "possible" that the photo showed the perpetrator of the crimes against her. Because of this, and because the photo was the only photo among the hundred or so that she looked at that depicted gold teeth, the trial court found the identification to be unreliable.
 {¶ 27} In cross-examination of Robinson, Smith's counsel inquired extensively of Robinson, concerning the photo id process that she participated in. His questioning included both the photo spread presented to Robinson as well as the photos that were depicted on the computer screen. The crux of the cross examination was that Robinson failed to identify the photo of Smith in the photo spread, and the implication of the remainder of the questioning was that even after viewing the pictures on Det. Ward's computer, no identification was made.
 {¶ 28} Once a party opens the door to a subject, the trial court has wide latitude in allowing the opposing party to present evidence on the same subject matter. Sims v. Dibler, 172 Ohio App.3d 486,2007-Ohio-3035, ¶ 34.
 {¶ 29} In ruling on the objection to this testimony, the trial court stated that "* * * the defense has opened the door to this testimony because it was the defense and not the prosecution who placed into the trial the pre-trial identification procedure that was conducted by Detective Ward. And there was detailed cross-examination of Latisha Robinson regarding the pre-trial identification procedure, so the door has been opened by the defense which would now allow this testimony by the detective — by the detective. So again, again to summarize, the court did indeed
 {¶ 30} suppress this identification procedure. The State did not introduce the identification procedure into the trial; the defense did. And because the door was *Page 9 
opened in this area on cross-examination, by law, the prosecutor will be permitted to also cover this same area with Detective Ward."
 {¶ 31} Once opened, the jury was entitled to hear the whole story. The trial court did not err in allowing the State to question Det. Ward about the "possible" identification of Smith from the computer photos, to balance the impression created in the cross examination of Robinson. The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR — CASE NO. 21463 {¶ 32} THE TRIAL COURT ERRED WHEN IT ALLOWED THE COMPLAINANT TO MAKE AN IN-COURT IDENTIFICATION.
 {¶ 33} In this assignment of error, Smith argues that it was error for the trial court to have allowed Robinson to make an in-court identification of him after she could not pick his picture out of a photo array immediately after the incident, and after the trial court suppressed the subsequent "possible" identification of him.
 {¶ 34} We would first note that Smith did not object when Robinson identified him at trial. Therefore, he has waived all but plain error with regard to the in-court identification of himself. State v.Moreland (1990), 50 Ohio St.3d 58, 62.
 {¶ 35} In State v. Lathan (1972), 30 Ohio St.2d 92, the Ohio Supreme Court held at paragraph one of the syllabus that even when a "critical pretrial confrontation" was illegal, a subsequent in-court identification is proper if it can be established that the "in-court identification had an independent origin or that error in its admission was harmless." In determining whether an in-court identification had an independent origin, we are directed to view the totality of the circumstances. Id. at paragraph 2 of the syllabus. And, only if such circumstances reveal "* * * that the witness' opportunity at *Page 10 
the time of the crime to observe her attacker was meager, and the circumstances surrounding a later improper `police confrontation' between the witness and the suspect were so highly suggestive as to the identity of the suspect as to create a grave opportunity for a mistaken identification * * * should such identification be excluded." Id. at paragraph 3 of the syllabus.
 {¶ 36} From the evidence it is clear that the confrontation between Little Ronnie and Robinson lasted a significant amount of time, perhaps as much as fifteen minutes. It occurred inside her apartment, in the light. Robinson's view of Little Ronnie was frontal and unobstructed. She observed and recalled his height, weight, dress, hair style and his gold teeth. Robinson provided a detailed description of Little Ronnie to the police immediately after the incident, and that description did not change throughout the trial. That description also matched the description provided by the other eyewitness. There is no evidence that her in-court identification was based on anything other than her observations at the time of the crime. Smith has failed to demonstrate that the trial court erred in allowing this testimony.
 {¶ 37} The fourth assignment of error is overruled.
 SIXTH ASSIGNMENT OF ERROR — CASE NO. 21463 {¶ 38} THE TRIAL COURT ERRED BY SENTENCING MR. SMITH TO MORE THAN A MINIMUM CONCURRENT PRISON TERM.
 {¶ 39} In this assignment of error Smith argues that hispre-Foster sentence is void; that the Foster remedy creates an unconstitutional ex post facto law, and that it violates due process. Because of these alleged infirmities, Smith claims that the trial court could not sentence him to more than the minimum term for each conviction, and *Page 11 
that the sentences must be served concurrently.
 {¶ 40} This court has repeatedly rejected these Constitutional arguments. See State v. Smith, Montgomery App. No. 21004,2006-Ohio-4405, at ¶ 34 (Foster remedy does not create an ex post facto law nor violate due process); State v. Burkhart, Champaign App. No. 2006-CA-18, 2007-Ohio-3436, at ¶ 7 (alleged Constitutional infirmities in a Supreme Court decision are not cognizable in this court).
 {¶ 41} Smith was sentenced in this case on January 27, 2006, well after the decision of the United States Supreme Court in Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. In the trial court, Smith made no objection to his sentence on the basis ofBlakely. Because Smith failed to raise this issue in the trial court, he has forfeited all but plain error for the purposes of appeal. State v.Payne, 114 Ohio St.3d 502, 2007-Ohio-4642.
 {¶ 42} In conducting a plain error analysis, we determine that no plain error occurred. Smith cannot establish that but for anyBlakely error, he would have received a more lenient sentence. See Crim. R. 52(B). As the Supreme Court noted in Payne, Foster represented a Pyrrhic victory for defendants affected by its holding. "Although defendants were successful in arguing the unconstitutionality of the sections of the statutes that required judicial findings for the imposition of higher than minimum sanctions, we did not adopt their proposed remedy of mandatory minimum sentences. Since Foster, trial courts no longer must navigate a series of criteria that dictate the sentence and ignore judicial discretion." Id. at ¶ 25.
 {¶ 43} Therefore, Smith has failed to establish that he was prejudiced by the judicial fact-finding requirements. If he were to be resentenced, nothing in the record *Page 12 
would hinder the trial court from considering the same factors it previously had been required to consider and imposing the same sentence. And, based upon the trial courts comments and findings at sentencing, it is highly unlikely that the trial court would impose anything less than the sentence already imposed. There is no plain error.
 {¶ 44} Smith's sixth assignment of error is overruled.
 FIFTH ASSIGNMENT OF ERROR — CASE NO. 21463 {¶ 45} MR. SMITH WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.
 {¶ 46} In this assignment of error, Smith claims that his counsel was ineffective at both trial and sentencing. Smith challenges his counsel's failure to object to Robinson's in-court identification of him and his failure to object to what he says was a mischaracterization of the testimony in the prosecutor's closing argument. He also asserts that his counsel's failure to raise a Blakely objection to his sentencing prevented him from securing minimum concurrent sentences.
 {¶ 47} In Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court interpreted the meaning of the accused's right to counsel and the standard by which ineffective assistance of counsel should be determined. The two-part test requires that a convicted defendant alleging ineffective assistance of counsel must show not only that counsel was not functioning as the counsel guaranteed by the Sixth Amendment so as to provide reasonably effective assistance but also that counsel's errors were so serious as to deprive the defendant of *Page 13 
a fair trial because of a reasonable probability that, but for counsel's unprofessional errors, the results would have been different. Id. at 687. Strickland goes on to say that "judicial scrutiny of counsel's performance must be highly deferential. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689 (citations omitted).
 {¶ 48} We have already discussed Smith's issue with the in-court identification of Smith by Robinson, in the fourth assignment of error, finding that there was no error in her identification, even if an objection had been asserted. Likewise, we discussed the sentencing issue in the sixth assignment of error, finding that assertion of theBlakely objection would merely have provided Smith with a resentencing, where the trial court was free to impose the same or a greater sentence on Smith. We have repeatedly rejected the claim that the assertion of aBlakely objection would result in mandatory minimum, concurrent sentences. Smith cannot establish that the outcome of the trial would have been different had his counsel done what he now claims he should have.
 {¶ 49} In considering Smith's claim of prosecutorial misconduct in closing argument, we must first determine whether the prosecutor's remarks were improper; if so, we must then consider whether the remarks prejudicially affected *Page 14 
substantial rights of the accused. State v. Treesh (2001),90 Ohio St.3d 460, 464, citing State v. Smith (1984), 14 Ohio St.3d 13, 14. We should also note that the State is entitled to a certain degree of latitude in its argument and is free to draw reasonable inferences from the evidence presented at trial.
 {¶ 50} The prosecutor's argument must be reviewed as a whole.State v. Burgun (1978), 56 Ohio St.2d 354, 366. And, reviewing the State's argument as a whole, we find that the State's comments did not constitute prosecutorial misconduct. Smith is correct in his assertion that Johnson testified that there was one man at the door; however, when he was pressed on whether there was only one man or more, in cross-examination, Johnson responded: "[w]as he by himself? It was people in the back but he was — he was at the door by hisself." Later, when asked how many men were with Little Ronnie, Johnson testified "I seen like two or three." While the prosecutor, in closing made a single statement that Johnson said there were two men at the door, we find that the distinction between one, two, or three, and the question of how close to the door they were standing is not material in light of the entire argument and the evidence, and is insufficient to have prejudicially affected any of Smith's substantial rights. Therefore there was no prosecutorial misconduct. And, because there is no prosecutorial misconduct, there can be no claim that Smith's counsel was ineffective for failing to object to the argument.
 {¶ 51} Smith's fifth assignment of error is overruled. *Page 15 
 ASSIGNMENT OF ERROR — CASE NO. 22334 {¶ 52} THE TRIAL JUDGE ABUSED HIS DISCRETION BY OVERRULING THE MOTIONS FOR NEW TRIAL MR. SMITH FILED ON JULY 9, 2007.
 {¶ 53} In this assignment, Smith asserts that the trial court's denial of his motion for a new trial without a hearing was an abuse of discretion.
 {¶ 54} We would first note that Crim. R. 33(B) provides the following: "Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period." In this case, the verdict was rendered on September 7, 2005.
 {¶ 55} Smith's first motion for a new trial was filed, pro se, on September 27, 2005, where he alleged that there was newly discovered evidence relating to fingerprints. This motion was overruled by the trial court, without a hearing, on October 4, 2005. Subsequently, Smith filed a second pro se motion for a new trial on October 19, 2005, alleging ineffective assistance of counsel. And, on November 1, 2005, Smith filed a third motion for a new trial on the basis of newly discovered evidence. He attached to this motion, an affidavit of Elonda Lewis who *Page 16 
states that there two different "Little Ronnies" at the Springcreek Apartments on the evening of September 27, 2004. On November 10, 2005, Smith filed yet another pro se motion for a new trial alleging ineffective assistance of counsel and insufficient evidence. And on that date he filed a pro se motion for a new trial on the basis of newly discovered evidence as well, baldly alleging that the victim lied in her testimony. On November 15, 2005, the trial court overruled the October 19th motion, the November 1st motion, and the November 10th motions, without a hearing.
 {¶ 56} On November 18, 2005, Smith filed his sixth motion for a new trial on the same basis as the overruled November 1, 2005 motion, attaching a second and more detailed affidavit from Elonda Lewis. This motion was overruled without a hearing on December 27, 2005. And, on December 29, 2005, Smith filed yet another motion for a new trial based upon alleged ineffective assistance of counsel, which the court overruled without a hearing on January 26, 2007. Additionally, on January 26, 2006, Smith filed a motion for a new trial, through new counsel, on the basis of newly discovered evidence, attaching the affidavit of Corey Pullings. The trial court overruled this motion without a hearing on January 27, 2006. Smith's appeal does not raise any issue with the rulings on these ten motions for a new trial.
 {¶ 57} Finally, on July 9. 2007, more than seventeen months after the verdict in this case, Smith filed one more pro se motion for a new trial, his *Page 17 
eleventh, on the basis of newly discovered evidence. Smith attached an affidavit of LaQwan Scandrick, a prison inmate with Smith serving a term of incarceration for aggravated murder and aggravated burglary. In this affidavit, Scandrick claims that he committed the crimes for which Smith was convicted.
 {¶ 58} In the motion, Smith states that he was aware, prior to trial that Scandrick committed these crimes, and that he communicated this information to his attorney. He claims that his attorney failed to act on this information because he "wanted to get the trial over with." Furthermore, Smith alleges that he was unavoidably detained in obtaining this evidence because he only recently found Scandrick.
 {¶ 59} Pursuant to Crim. R. 33(B), a defendant must prove by clear and convincing evidence that he was unavoidably prevented from filing a timely motion or discovering the new evidence within one hundred twenty days of the verdict. State v. Boykin, Montgomery App. No. 19962,2004-Ohio-5827, at ¶ 8; State v. Warwick, Champaign App. No. 01 CA 33, 2002-Ohio-3649, 2002 WL 1585663, * 2. Clear and convincing evidence requires more than a mere allegation that a defendant was unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial motion. "[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new *Page 18 
trial in the exercise of reasonable diligence." (emphasis supplied.)State v. McCoy, Montgomery App. No. 21032, 2006-Ohio-1137, at ¶ 8, citing State v. Walden (1984), 19 Ohio App.3d 141, 145-46.
 {¶ 60} Because Smith filed his motion more than 120 days from the date of his conviction, he was required to provide clear and convincing proof that, despite his due diligence, he was unavoidably prevented from discovering this new evidence. In his motion, Smith concedes that he was aware of the ground for the motion, but simply asserts that he was not able to obtain Scandrick's affidavit until the date it was signed.
 {¶ 61} In State v. Smith (Mar. 27, 1998), Miami App. No. 97 CA 46,1998 WL 404458, * 5, we held that in order for a trial court to consider an untimely motion for a new trial on the basis of newly discovered evidence that the defendant must proceed through a two-step process where first, the defendant submits affidavits supporting his assertion of unavoidable delay. Then, if the trial court finds that the delay was unavoidable, the court issues an order finding that a valid basis exists to justify allowing the defendant to file the delayed motion for new trial. See State v. Dawson (2000), 89 Ohio St.3d 1208, 2000-Ohio-442.
 {¶ 62} Herein, the trial court should have dismissed the motion on the basis that Smith failed to demonstrate that the delay in asserting the motion was unavoidable. Based upon Smith's allegations in the motion, where he conceded that he was aware of the grounds for the motion for the new trial prior to trial, the *Page 19 
evidence is not newly discovered and he was not unavoidably delayed in presenting the evidence to the court. Nonetheless, we note that we may not reverse a correct judgment merely because it was reached for the wrong reason. State v. Lozier, 101 Ohio St.3d 161, 166, 2004-Ohio-732
at ¶ 46, citing State ex rel. McGinty v. Cleveland City School Dist Bd. ofEdn. (1998), 81 Ohio St.3d 283, 290. See, also, Helvering v.Gowranus (1937), 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224.
 {¶ 63} This assignment of error is overruled.
 FIRST SUPPLEMENTAL ASSIGNMENT OF ERROR {¶ 64} MR. SMITH'S RIGHT TO DUE PROCESS WAS VIOLATED WHEN HE WAS SENTENCED IN PART IN RELIANCE ON CONVICTIONS THAT WERE SUBSEQUENTLY VACATED.
 {¶ 65} In addition to the charges addressed in this case, at sentencing, Smith was also sentenced for a conviction in a separate case for carrying a concealed weapon and for having a weapon under disability. Subsequent to the sentencing, we reversed Smith's conviction on the unrelated charges. Smith now suggests that because the sentencings on both cases were conducted together, the trial court must have relied upon his conviction in the reversed cases in order to have sentenced him in the present cases.
 {¶ 66} It is clear that there is an established federal due process protection against a trial court's reliance on materially false information at sentencing. See *Page 20 Stewart v. Erwin (6th Cir. 2007), 503 F.3d 488. In order to establish such a due process violation based on the use of false information in sentencing, Smith must show that the information in question was materially false and that the trial court relied on it.United States v. Polselli (C.A. 6, 1984), 747 F.2d 356, 358; Collins v.Buchkoe, 493 F.2d 343, 345-46 (6th Cir. 1974); Potter v. Yukins (C.A. 6, 2001), 6 Fed.Appx. 295, 296, 2001 WL 259154, * 1.
 {¶ 67} In sentencing Smith on the crimes herein, the trial court made extensive findings to support the maximum, consecutive sentences imposed. None of those findings relate to the reversed convictions, except that the trial court found that Smith had a long and substantial history of violent criminal behavior. Smith's criminal record is so extensive that whether he had seven or six adult felony convictions along with ten juvenile convictions and twelve adult misdemeanor convictions is immaterial to the sentence ultimately imposed. Smith has failed to demonstrate that the trial court relied upon the reversed convictions in imposing the sentences herein.
 {¶ 68} The first supplemental assignment of error is overruled.
 SECOND SUPPLEMENTAL ASSIGNMENT OF ERROR {¶ 69} MR. SMITH WAS CONVICTED OF AND SENTENCED FOR AGGRAVATED BURGLARY AND AGGRAVATED ROBBERY EVEN THOUGH THE INDICTMENT WAS DEFECTIVE IN THAT IT FAILED TO CHARGE ESSENTIAL ELEMENTS OF THE OFFENSES IN VIOLATION OF HIS RIGHT *Page 21 
TO DUE PROCESS OF LAW UNDER BOTH THE OHIO AND UNITED STATES CONSTITUTIONS.
 {¶ 70} In this assignment of error, Smith relies on the Ohio Supreme Court's decision in State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, and claims that the State's failure to include the element of mens rea in the indictments for Aggravated Robbery and Aggravated Burglary was error that necessitates a reversal of these convictions. He also cites to an appellate decision that applies Colon to the aggravated robbery charge that Smith faced here. See State v. Lester, Hamilton App. No. C-070383, 2008-Ohio-3570.
 {¶ 71} The Court in Colon found that a defendant's indictment on one count of robbery in violation of R.C. 2911.01(A)(2) was defective, because it failed to include R.C. 2901.21(B)'s catch-all mental element of recklessness for robbery subsection (A)(2)'s actus reas.Colon, 2008-Ohio-1624, at ¶ 2, 11-15. In order to reach this conclusion, however, the Court first found that robbery under 2911.01(A)(2) didnot impose strict liability, because if a statute "does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense." Id. at ¶ 11-15, citing R.C. 2901.21(B); State v. Lozier,101 Ohio St.3d 161, 2004-Ohio-732, 803 N.E.2d 770, ¶ 18, 19, 21.
 {¶ 72} In this case, Smith was indicted on one count of aggravated robbery in violation of R.C. 2911.01(A)(1), which provides: "No person, in attempting or *Page 22 
committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]" The Ohio Supreme Court has previously found that an (A)(1) aggravated robbery is a strict liability offense. State v. Wharf (1999),86 Ohio St.3d 375, 378. Therefore, Colon's holding is inapplicable to the Aggravated Robbery charge this case. In addition, the Court of Appeals for the Tenth District has recently addressed this same issue and concluded that Colon does not apply to R.C. 2911.01(A)(1), because an (A)(1) aggravated robbery is a strict liability offense. State v.Ferguson, 10th Dist. No. 07AP-640, 2008-Ohio-3827, at ¶ 37-39; State v.Glover, 10th Dist. No. 07AP-832, 2008-Ohio-4255, at ¶ 34; State v.Hill, 10th Dist. No. 07AP-889, 2008-Ohio-4257, ¶ 35. See also Statev. Walker, Lucas App. No. L-07-1156, 2008-Ohio-4614; State v. Wade, Cuyahoga App. No. 90145, 2008-Ohio-4870; State v. Jelks, Shelby App. 17-08-18, 2008-Ohio-5828. In Lester, the First District Court of Appeals, without any analysis of the above factors, came to a contrary conclusion.
 {¶ 73} We agree with the tenth district's conclusion and analysis in these cases. Accordingly, this Court finds that this case is distinguishable from Colon, because Smith was indicted on a strict liability aggravated robbery offense.
 {¶ 74} Herein, Smith was also charged with aggravated burglary, in addition to the aggravated robbery. However, the aggravated burglary charge does not *Page 23 
involve the same issue as Colon, where the mens rea for the aggravated robbery charge had to be established by reference to the default provision set forth in R.C. 2921.01(B). R.C. 2911.11(A)(2) includes as one element that the offender act "with purpose to commit in the structure * * * any criminal offense." In this case, the criminal offense appellant was alleged to have acted with the purpose to commit was aggravated robbery in violation of R.C. 2911.01(A)(1). Smith claims that the jury could have alternatively found that he came to the residence with the intent to commit an assault on Corey Pullings.
 {¶ 75} The Ohio Supreme Court has held that an indictment that tracks the language of the statute setting forth the charged offense does not have to separately set forth the elements of a predicate offense.State v. Buehner, 110 Ohio St.3d 403, 2006-Ohio-4707. See, also,State v. Murphy (1992), 65 Ohio St.3d 554. "The state's failure to list the elements of a predicate offense in the indictment in no way prevents the accused from receiving adequate notice of the charges against him."Buehner, supra, at ¶ 11.
 {¶ 76} Here, the indictment for aggravated burglary tracked the language of R.C. 2911.11(A)(2), including both the purpose element and the identification of trespass as a predicate offense. Appellant suggests that Buehner was overruled by the Supreme Court's decision inColon. However, while the Colon decision cites Buehner, there is nothing in the decision indicating any attempt to overrule Buehner Because the aggravated burglary indictment in this case properly *Page 24 
tracked the statutory language setting forth the charged offense, pursuant to Buehner, the indictment was not defective. Therefore, it is not necessary for us to consider whether plain error analysis or theColon structural error analysis applies here.
 {¶ 77} Consequently, appellant's second supplemental assignment of error is overruled.
 {¶ 78} Based on the foregoing, the judgments appealed from are affirmed.
BROGAN, J., concurs.
DONOVAN, J., concurs in judgment only.
(Hon. Sumner E. Walters, retired from the Third Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)