OPINION
{¶ 1} Defendant-appellant Steve Humble appeals his conviction and sentence for one count of complicity to commit aggravated robbery, a felony of the first degree. Following a jury trial which began on May 1, 2008, and ended on May 2, 2008, Humble was found guilty and convicted of complicity to commit aggravated robbery. On May 19, 2008, the trial court *Page 2 
sentenced Humble to five years in prison, with an additional five years of post-release control. Humble filed a timely notice of appeal with this Court on May 22, 2008.
 I {¶ 2} At approximately 11:15 p.m. on January 25, 2008, a white male, later identified as Brian Ritter, robbed a Blockbuster Video located at 680 Aviator Court in Vandalia, Ohio. Samantha Pierson, the Blockbuster employee who was working at the time of the robbery, testified that Ritter entered the store and waited until all of the customers left before approaching the counter and demanding money from the register. Pierson testified that she initially refused to give Ritter any money, but he pulled out a sharp metal tool and threatened her with it. Pierson gave Ritter all of the money in the register, which totaled $181.00, and Ritter left the video store.
 {¶ 3} Pierson testified that Ritter ran to an old, white van which was backed into a parking place so that the rear of the vehicle was facing the front entrance of the store. Pierson observed Ritter enter the vehicle through the back door of the van which was open and "ready for him to jump in." Pierson was able to write down the van's license plate number as it left the video store parking lot, after which she immediately called the police.
 {¶ 4} Vandalia Police Officer Brian Krimm was dispatched to the Blockbuster store at approximately 11:23 p.m. Officer Krimm interviewed Pierson, viewed a video tape of the robbery, and issued a police bulletin including the license plate number and description of the van, as well as a physical description of Ritter. Officer Krimm was informed by dispatch that the van was registered to Janet S. Davis, who was later determined to be the mother of Brian Ritter. A felony warrant was executed at Davis' house, but Ritter was not located there. *Page 3 
 {¶ 5} At approximately 2:30 a.m. on January 26, 2008, Officer Krimm was notified that Dayton Police were in pursuit of the van used in the earlier robbery. Shortly thereafter, Officer Krimm received word that the van had crashed into a fence and two suspects were in custody. Upon arriving at the scene of the stop, Officer Krimm observed that one of the suspects, who was later identified as Ritter, matched the description provided by Pierson. The other suspect was identified as Cedrick Ward, and both suspects were transported to the police station to be interviewed.
 {¶ 6} Vandalia Police Detective David Steinbrunner interviewed both suspects separately. Ritter refused to talk to Detective Steinbrunner. Ward, however, agreed to talk to Detective Steinbrunner. Ward was released from custody after the interview.
 {¶ 7} Detective Steinbrunner also interviewed Janet Davis and Toni Mahaffy, Ritter's mother and sister, respectively. Mahaffy told Detective Steinbrunner that she encountered her brother, Ritter, and the appellant, Steve Humble, in a hotel parking lot in Dayton, Ohio, where she was sent to help retrieve her mother's van at approximately 11:30 p.m. on January 25, 2008. Mahaffy testified that Humble was driving the van when she found them. Mahaffy further testified that she told Ritter to call their mother. After Ritter spoke with Davis on the phone, Mahaffy testified that Humble told Ritter to bring his sister to their hotel room. Once inside the hotel room, Mahaffy testified that she witnessed Ritter empty a wad of cash onto the bed from his sweatshirt. Ritter and Humble then divided the money between themselves, and Mahaffy testified that they left the hotel room to purchase drugs from another location. Mahaffy was able to identify Humble from a photo spread provided by Detective Steinbrunner.
 {¶ 8} Detective Steinbrunner eventually interviewed Humble who admitted that he *Page 4 
drove the van to the Blockbuster video store on he night of January 25, 2008. Humble denied, however, that he had any knowledge that Ritter intended to rob the store. Humble also admitted that when Ritter ran out of the store, jumped in the van, and stated "go, go, go," he thought Ritter might have robbed the store. Humble was subsequently arrested and charged with complicity to commit aggravated robbery.
 {¶ 9} After a jury trial, Humble was found guilty of complicity to commit aggravated robbery, and the trial court sentenced him accordingly. It is from this judgment that Humble now appeals.
 II {¶ 10} Humble's first assignment of error is as follows:
 {¶ 11} "THE TRIAL COURT ERRED BY ALLOWING INADMISSIBLE HEARSAY TO BE INTRODUCED WITHOUT WHICH THE DEFENDANT WOULD HAVE NEVER BEEN CONVICTED."
 {¶ 12} In his first assignment, Humble contends that the trial court abused its discretion when it allowed the State to refresh Detective Steinbrunner's memory when he testified after reviewing a transcript of the taped interview between himself and Humble. The interview was transcribed by Detective Steinbrunner's secretary. Humble argues that because the transcript of the interview was typed by the detective's secretary, who was not a party to the conversation, it is inadmissible hearsay from a non-testifying third-party. Humble also emphasizes that the transcript produced by Detective Steinbrunner's secretary contains some mistakes. Humble complains that the transcript, in addition to being inadmissible hearsay, was, therefore, unreliable as it did not correctly convey the actual conversation between Detective Steinbrunner *Page 5 
and Humble. Thus, Humble argues that the trial court abused its discretion when it allowed Detective Steinbrunner to refresh his memory with the transcript of the interview.
 {¶ 13} As a general rule, "admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v.Haines, 112 Ohio St.3d 393, 402-403, 2006-Ohio-6711. We review evidentiary decisions for abuse of discretion, which means that the trial court must have acted arbitrarily, unreasonably or unconscionably. Decisions are unreasonable, however, if they lack a sound reasoning process. AAAA Enterprises, Inc. v. River Place Community UrbanRedevelopment Corp. (1990), 50 Ohio St.3d 157.
 {¶ 14} Humble initially argues that the transcript of his interview with Detective Steinbrunner is the inadmissible hearsay of the detective's secretary who transcribed the interview from an audio tape. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). Generally, hearsay is not admissible except as authorized by constitution, statute, or rules prescribed by the Ohio Supreme Court. Evid. R. 802.
 {¶ 15} First, we note the State used the transcript of the interview merely to refresh Detective Steinbrunner's memory regarding his interview of Humble. The transcript is exactly what it purports to be, that is, a written transcription of the audio interview containing Humble's admissions, and not the independent statement of Detective Steinbrunner's secretary. Pursuant to Evid. R. 801(D)(2)(a), Humble's statements as transcribed are admissions made by a party opponent for use at trial, and, therefore, not hearsay by definition. *Page 6 
 {¶ 16} "When a writing is used to refresh recollection, `[t]he writing itself is not offered as evidence. It merely serves as a memory jogging device, and compliance with the hearsay rule, the authentication rule or the so-called "best evidence rule" is not required.' The writing used to refresh the witness's recollection is not admitted into evidence unless admission is requested by the adverse party, and in any event has no substantive evidentiary significance.'" State v. Carr-Poindexter, Montgomery App. No. 20197, 2005-Ohio-1571, citing Barhorst v. SonocoProducts Co. (Sept. 12, 1997), Miami App. No. 96CA28.
 {¶ 17} Evid. R. 612, which governs the use of a writing in order to refresh a witness' memory, provides in pertinent part:
 {¶ 18} "Except as otherwise provided in criminal proceedings by Rules 16(B)(1)(g) and 16(C)(1)(d) of Ohio Rules of Criminal Procedure, if a witness uses a writing to refresh his memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing. He is also entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness * * *."
 {¶ 19} During his testimony at trial, Detective Steinbrunner stated that if he were shown a copy of the transcript, that it would help refresh his recollection regarding his interview of Humble. Defense counsel objected stating that Detective Steinbrunner could not use the transcript to refresh his memory because he did not prepare the document himself. Defense counsel also pointed out that there were some minor *Page 7 
discrepancies between the audio tape of the interview and the transcript prepared by Detective Steinbrunner's secretary. Defense counsel did agree, however, that the document was a copy of Detective Steinbrunner's interview with Humble. The trial court overruled counsel's objection, stating correctly that Evid. R. 612 allowed the use of the transcript to refresh the detective's memory. Moreover, defense counsel was allowed to cross-examine Detective Steinbrunner in regards to the mistakes in which the secretary misinterpreted some words in the interview. Upon review of the record before us, we hold that, pursuant to Evid. R. 612, the trial court did not abuse its discretion by permitting the State to refresh Detective Steinbrunner's recollection by showing him the transcript of his interview with Humble. Humble's first assignment of error is overruled.
 III {¶ 20} Humble's second and final assignment of error is as follows:
 {¶ 21} "THE INDICTMENT FAILED TO CHARGE MENS REA AND THEREFORE IS STRUCTURALLY DEFICIENT."
 {¶ 22} In his final assignment, Humble argues that the indictment was structurally defective because it did not include all of the essential elements of the offense of complicity to commit aggravated robbery. Specifically, Humble asserts that the indictment omitted the required mens rea for the crime of aggravated robbery. In light of this deficiency, Humble contends that he was not provided proper notice of the charge against him, and his conviction must be reversed.
 {¶ 23} In support of his argument, Humble cites to the Ohio Supreme Court's decision in State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, which stated that *Page 8 
"when an indictment fails to charge a mens rea element of a crime and the defendant fails to raise that defect in the trial court, the defendant has not waived the defect in the indictment." Id. at syllabus. The Supreme Court further held in Colon that a structural error analysis applied due to the constitutional errors that permeated the defendant's trial.
 {¶ 24} Before we determine whether a structural error analysis applies in this case, we must first determine whether the indictment was defective. In the case before us, Humble was charged with complicity to commit aggravated robbery in violation of R.C. § 2911.01(A)(1), which states:
 {¶ 25} "(A) No person, in attempting or committing a theft offense, * * * or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 26} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
 {¶ 27} The indictment herein provides in pertinent part:
 {¶ 28} "* * * [T]hat STEVEN W. HUMBLE on or about January 25, 2008 in the County of Montgomery, aforesaid, and State of Ohio, while acting with the kind of culpability required for the commission of an offense, did aid or abet another in committing the offense of Aggravated Robbery, a violation of Section 2911.01 (A)(1) of the Ohio Revised Code; contrary to the form of the statute (in violation of Section 2923.03(A)(2) of the Ohio Revised Code) * * *."
 {¶ 29} In State v. Smith, Montgomery App. No. 22334, 2008-Ohio-6330, we specifically held that "[t]he Ohio Supreme Court has previously found that an (A)(1) *Page 9 
aggravated robbery is a strict liability offense. State v. Wharf,86 Ohio St.3d 375, 378, 1999-Ohio-112." Thus, Colon's holding is inapplicable to the complicity to aggravated robbery charge in this case, and the indictment was not defective or otherwise structurally deficient.
 {¶ 30} Humble's second assignment of error is overruled.
 IV {¶ 31} All of Humble assignments of error having been overruled, the judgment of the trial court is affirmed.
FAIN, J. and FROELICH, J., concur. *Page 1