[Cite as *State v. Smith*, 2016-Ohio-7904.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 27015 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2004-CR-3554 |
| v. | : | |
| | : | (Criminal Appeal from |
| RONALD A. SMITH | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of November, 2016.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MEAGAN D. WOODALL, Atty. Reg. No. 0093466, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

RONALD SMITH, No. 516-443, Trumbull Correctional Institution, Post Office Box 901, Leavittsburg, Ohio 44430
      Defendant-Appellant, pro se

. . . . . . . . . . . . .

HALL, J.

    **{¶ 1}** Ronald Smith appeals pro se from a final judgment denying his motion for a

new trial and his motion for leave to file a motion for a new trial, based on a claim of newly

discovered evidence.

## I. Background

{¶ 2} In 2005, Smith was found guilty of aggravated burglary and aggravated robbery. The trial court sentenced him to consecutive ten-year prison terms, for a total sentence of twenty years. We affirmed Smith's convictions on direct appeal, in *State v. Smith*, 2d Dist. Montgomery Nos. 21463, 22334, 2008-Ohio-6330. In our opinion, we set forth the facts of this case as follows:

During the evening hours of September 27, 2004, two African–American males, one identifying himself as "Little Ronnie," kicked in the front door of Latisha Robinson's apartment and entered. The man identifying himself as Little Ronnie, was armed with a gun. He got in her face and demanded to know where her boyfriend, Corey Pullings, was. The other man went to her back door and opened it, allowing three additional men to enter the apartment.

When Robinson denied any knowledge of Pullings, Little Ronnie went upstairs in the apartment, tearing the handrail off the wall, and he went into Robinson's bedroom putting the gun to her son's head. He then demanded Robinson give him something to get him to leave. Robinson gave one of the men sixty dollars and her cell phone.

Meanwhile, the four men downstairs ransacked Robinson's apartment, toppling furniture and rummaging through boxes, throwing things to the floor. The men took additional items from the apartment, including radios and CD's. During the ransacking of the apartment, the

gunman, who repeatedly identified himself as "Little Ronnie," and Robinson were engaged in a confrontation in the dining room where he attempted to force Robinson to lay on the floor "like execution style." Finally, after the other men exited the apartment, "Little Ronnie" ran out, too.

Robinson then escaped to a neighbor's apartment, where the police were called. The next day, Detective Ward, of the Montgomery County Sheriff's Office prepared a photo spread containing a picture of Ronald Smith, the only individual the detective knew that called himself "Little Ronnie." Robinson could not identify anyone in the photo spread. Subsequently, when Robinson was viewing serial photos on the detective's computer screen, a photo of Smith came up, showing his gold teeth that were not displayed in the prior photo. Robinson indicated that this picture of Smith "could possibly be the person who was in her house."

Subsequently, a neighbor, who had opened his door while Smith and the others were knocking at Robinson's door, immediately picked out Smith from a photo spread as the man at her door, and who had identified himself as Little Ronnie.

Smith was arrested. After being Mirandized, Smith admitted that he and four others went to Robinson's apartment looking for Corey Pullings, but claimed that he left after being told that he was not there. He claimed that one of the other men kicked in the door and entered, but denied that he ever entered the apartment. Prior to trial, Smith made a number of phone calls attempting to get Robinson to take a payoff to drop the charges, and

attempting to set up an excuse for why he was in the area.

*Smith* at ¶ 3-8.

**{¶ 3}** The motions that are the subject of this appeal are by our count Smith's thirteenth and fourteenth separate motions for a new trial, or for leave to file such a motion, since his conviction in 2005. Smith filed his "Motion for New – Trial Pursuant to Newly Discovered Evidence Crim R. 33" on October 29, 2015. This motion was supported by an affidavit of Nancy C. Duke to the effect that she observed Smith driving away from the apartment complex where the offenses occurred for which he is in prison, and she then saw another person kick in the door to an apartment. Smith also filed his "Motion for A Order Granting Leave to file A Motion for New – Trial Crim. R. 33(B)" on October 30, 2015, supported by essentially the same evidence.

**{¶ 4}** With regard to the October 29th new trial motion, the trial court overruled that motion, by a decision and order filed February 3, 2016, for the reason that Smith did not follow Crim. R. 33(B) by requesting leave of court to file the motion for a new trial before the actual motion was filed. Indeed, if a defendant intends to file a motion for a new trial based on newly discovered evidence after more than 120 days, the defendant must first seek leave of court before the new trial motion itself can be filed. He "must first file a motion for leave, showing by 'clear and convincing proof that he has been unavoidably prevented from filing a motion in a timely fashion.' " *State v. Parker*, 178 Ohio App.3d 574, 2008–Ohio–5178, 899 N.E.2d 183, ¶ 15 (2d Dist.), quoting *State v. Morgan*, 3d Dist. Shelby No. 17–05–26, 2006–Ohio–145, ¶ 7. The trial court was correct to overrule the new trial motion itself which was filed without first obtaining leave.

**{¶ 5}** With regard to Smith's October 30th motion for leave to file his new trial

motion, the trial court overruled that motion in a detailed decision and order filed February 2, 2016.

{¶ 6} Attached to the motion for leave is Smith's own affidavit, an affidavit from a woman named Nancy Duke, and a letter dated September 18, 2015, that Duke sent Smith. Duke states in her affidavit that she saw Smith drive away from the apartment building before the crime occurred. And she states that she saw a man named LaQwan Scandrick kick in the door and enter the apartment. Duke states that Scandrick is also known as "Little Ronnie" and also has gold teeth and braids. In her letter, Duke tells Smith what she saw. She says that, at the time, she was afraid to come forward. But she says that she looked up Scandrick recently and discovered that he is serving a life sentence for murder, so she no longer has any reason to fear him. Smith states in his affidavit that he did not know until he received Duke's letter that she was at the scene and saw what she claims to have seen.

{¶ 7} The trial court overruled without a hearing the motion for leave to file a new-trial motion and the motion for a new trial itself. The trial court concluded that Smith was not unavoidably prevented from discovering the facts alleged in Duke's affidavit. In addition, it concluded that Smith failed to show that Duke's affidavit creates a strong probability that he would be acquitted in a new trial.

{¶ 8} Smith appealed.

## II. Analysis

{¶ 9} Smith assigns two errors to the trial court. The first alleges that the court abused its discretion by overruling his motion for leave to file the new-trial motion. And the second alleges that the court abused its discretion by overruling the motion for a new

trial. We have already determined, at ¶ 4, *supra*, that the trial court correctly overruled the motion for a new trial because it was filed without leave of court. We focus the remainder of our analysis on whether the trial court correctly overruled the request for leave to file the new trial motion.

The decision whether to grant a motion for a new trial lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54.

"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

\* \* \*

Pursuant to Crim.R. 33(A)(6), a new trial may be granted when new evidence material to the defense is discovered that the defendant could not with reasonable diligence have discovered and produced at trial. To prevail on a motion for new trial based upon newly discovered evidence, Defendant must show that the new evidence: (1) discloses a strong probability that the result of the trial would be different if a new trial were granted; (2) has been discovered since the trial; (3) is such as could not have been discovered before the trial through the exercise of due diligence; (4) is material to the

issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence. *State v. Petro* (1947), 148 Ohio St. 505, 76 N.E.2d 370.

Motions for a new trial based upon newly discovered evidence must be filed within one hundred twenty days after the verdict was rendered unless it appears by clear and convincing proof that Defendant was unavoidably prevented from discovering the new evidence, in which case the motion for new trial must be filed within seven days from the order of the court finding that Defendant was unavoidably prevented from discovering the new evidence within the one hundred twenty day period. Crim.R. 33(B).

*State v. DeVaughns*, 2d Dist. Montgomery No. 23720, 2011-Ohio-125, ¶ 16-20.

{¶ 10} The guilty verdicts in this case were returned by the jury in September 2005. Smith filed his motions in October 2015, over ten years later. Being obviously untimely, he was required to demonstrate by clear and convincing proof that he was unavoidably prevented from discovering the new evidence within 120 days after the guilty verdicts were rendered. The trial court concluded that Smith failed to do that. The court found that Duke is "not a disinterested or impartial witness," noting that in the letter she tells Smith, "I want you to know I miss you and I have love for you." The court found persuasive the State's argument that Duke had almost 9 years to check Scandrick's status and come forward. And when she did come forward, instead of going to the police, Duke mailed a letter with her affidavit to Smith. Smith's and Duke's affidavits, said the court, must be viewed in the context of Smith's "repeated efforts to obstruct justice in this case, both before and after the trial, including the prior filing of a false affidavit." And the court said

that the affidavits must be weighed against the testimony and evidence presented at trial.

{¶ 11} Smith's twelfth motion for a new trial was also purportedly based on newly discovered evidence and the evidence then was the testimony of one Theron Lewis who claimed to have witnessed the crime. Lewis was a fellow prison inmate who stated in his affidavit that he was present when this crime occurred and that he too saw Scandrick kick open the door to the apartment and go inside. In his own affidavit, Smith claimed that he was unavoidably prevented from discovering this new evidence because he did not know the affiant until they met in prison. The trial court summarily overruled this motion too, finding that Smith failed to demonstrate that he was unavoidably prevented from discovering the new evidence. The court then also found that Smith's affidavit was not credible. This finding was based in part on the timing of his affidavit, signed just 22 days after the Ohio Supreme Court had affirmed his conviction. The trial court said that Smith's discovery of a new exculpatory witness just a short time after his conviction was upheld was "an incredible coincidence." The court also based its credibility finding on Smith's repeated attempts to obstruct justice in this case, both before and after the trial, and his filing of a false affidavit from another witness in support of a previous motion for a new trial. We found no abuse of discretion in the trial court's denial of Smith's twelfth motion for a new trial on the basis of the incredibility of Smith's affidavit. *State v. Smith*, 2d Dist. Montgomery No. 23945, 2011-Ohio-2189, ¶ 21. In addition, we said that even if Smith had demonstrated that he was unavoidably prevented from discovering the facts alleged in the witness's affidavit, in light of the evidence that was presented at the trial, Smith failed to demonstrate a strong probability that this new evidence would change the result of the trial. *Id.* at ¶ 22-26.

**{¶ 12}** We can't help but notice, as did the trial court, that not only are the circumstances of how Smith submitted Nancy Duke's gratuitous "**Affitdavit** [sic]" suspicious, the contents of the document itself and her letter to Smith, which was also attached to Smith's motion for leave, are suspicious on their face. Duke's letter indicates she is submitting the unsolicited "**affitdavit** [sic]" "to clear my **conscious** [sic]." (Emphasis added.) This is eerily similar to LaQwan Scandrick's 2009 "Sworn **Affitdavit** [sic]" which was filed in support of a previous motion and which was also attached to Smith's October, 29, 2015 new trial motion. Scandrick had also said he was gratuitously coming forward because "it would be on my **conscious** [sic]." Furthermore, Duke's rendition of events at the subject apartment is contrary to that in Scandrick's sworn statement, and, more importantly, contrary to Smith's own statement to detectives. Duke's letter states that she saw Smith driving away from the apartments "with some b**** in the car" and her affidavit says, after he was seen driving away, she then saw Scandrick kick in the door to the apartment. But Smith's own version of events, which we repeated in ¶2 above from our opinion in his direct appeal, is that Smith was at the apartment door when one of the other men he was with kicked in the door, but he, Smith, did not go in. And, Scandrick's affidavit says that while he and his accomplices were at the apartment "some other dude walked up to the door next to us he had braids and gold teeth," presumably describing Ronald Smith. Duke's statement that she saw Smith leave and then Scandrick arrive and kick in the door is therefore inconsistent with both Smith's and Scandrick's rendition of events.

**{¶ 13}** After review of all the facts and circumstances we find no abuse of discretion

in the trial court's denial of Smith's motion for leave to file a motion for a new trial, for the reasons given by the court. And for the same reasons as those we gave in our review of his twelfth new-trial motion, even if Smith had demonstrated that he was unavoidably prevented from discovering the facts alleged in Duke's affidavit, he fails to show a strong probability that this new evidence would change the result of the trial. The trial court did not err by overruling Smith's motion for leave to file a motion for a new trial or by overruling his motion for a new trial.

{¶ 14} Both assignments of error are overruled.

### III. Conclusion

{¶ 15} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J., and WELBAUM, J., concur.

Copies mailed to:

Mathias H. Heck
Meagan D. Woodall
Ronald A. Smith
Hon. Gregory F. Singer